**Commonwealth of Massachusetts**
**County of Essex**
**The Superior Court**

CIVIL DOCKET# ESCV2010-01859-A

Pailes
vs.
HSBC Mortgage Services,
Beneficial Mortgage Corporation

ATTEST: A TRUE COPY
& DISINTERESTED CONSTABLE PARTY

## ORDER OF NOTICE

To the above-named Defendant:

**YOU ARE HEREBY NOTIFIED** that application has been made in said action, as appears in the Complaint, for a Motion for a Restraining Order and that a hearing upon such Motion will be held at the court house at said

Essex, on **09/07/2010 A.D. at 02:00 PM** in
**CtRm 2 -rear (Salem) (Salem),**

at which time you may appear and show cause why such Motion should not be granted.

**Witness, Barbara J. Rouse**, Esquire, Chief Justice of the Superior Court, at Salem, Massachusetts this 1st day of September, 2010.

.................................................
· Clerk

## RETURN

Essex, ss.                                            Date:........................................
       I hereby certify and return that on .............................. I served a copy of the within summons, together with a copy of the Complaint in this action, upon the within-named defendant, in the following manner (See Mass.R.Civ.P. 4(d) (1-5):

| CIVIL ACTION COVER SHEET | DOCKET NO.(S) 2010-1859-A | Trial Court of Massachusetts Superior Court Department County: |
|---|---|---|
| PLAINTIFF(S) Daniel Pailes | DEFENDANT(S) HSBC mortgage Services / DBA The Corporation Trust Co, 209 Orange St. Wilmington, DE. 19801 | |
| ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE | ATTORNEY (if known) Reneau Longoria, Esq. 100 Cummings Center Ste. 225b Beverly, MA. 01915 | |
| Board of Bar Overseers number: | | |

Origin code and track designation

Place an x in one box only:
- [x] 1. F01 Original Complaint
- [ ] 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- [ ] 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- [ ] 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- [ ] 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- [ ] 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION** (See reverse side)

CODE NO. TYPE OF ACTION (specify) TRACK IS THIS A JURY CASE?
(    )(B·4)    (  )    (  ) Yes    (  ) No

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ................................................. $............
  2. Total Doctor expenses .................................................. $............
  3. Total chiropractic expenses ........................................... $............
  4. Total physical therapy expenses ...................................... $............
  5. Total other expenses (describe) ...................................... Subtotal $............

B. Documented lost wages and compensation to date ................ $............
C. Documented property damages to date ............................... $............
D. Reasonably anticipated future medical and hospital expenses ... $............
E. Reasonably anticipated lost wages ................................... $............
F. Other documented items of damages (describe) .................... $............

G. Brief description of plaintiff's injury, including nature and extent of injury (describe)

$............

FILED
SUPERIOR COURT
FOR THE COUNTY OF ESSEX
AUG 26 2010
CLERK

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $............

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

Signature of Attorney of Record _____ DATE: August 26, 2010

AOTC-6 mtc005-11/99
A O.S.C 1-2000

County of Essex
The Superior Court

CIVIL DOCKET # ESCV2010-01859-A
Courtroom CtRm 2 -rear (Salem)

RE: Pailes v HSBC Mortgage Services et al
TO:
Daniel Pailes
42 North End Blvd
Salisbury, MA 01952

## SCHEDULING ORDER FOR F TRACK

You are hereby notified that this case is on the track referenced above as per Superior Court Standing Order 1-88. The order requires that the various stages of litigation described below must be completed not later than the deadlines indicated, and case shall be resolved and judgment shall issue 06/22/2012.

| STAGES OF LITIGATION | DEADLINES | | |
|---|---|---|---|
| | SERVED BY | FILED BY | HEARD BY |
| Service of process made and return filed with the Court | 11/30/2010 | 11/30/2010 | |
| Response to the complaint filed (also see MRCP 12) | | 12/30/2010 | |
| All motions under MRCP 12, 19, and 20 | 12/30/2010 | 01/29/2011 | 02/28/2011 |
| All motions under MRCP 15 | 12/30/2010 | 01/29/2011 | 02/28/2011 |
| All discovery requests and depositions served and non-expert depositions completed | 06/28/2011 | | |
| All motions under MRCP 56 | 07/28/2011 | 08/27/2011 | |
| Final pre-trial conference held and/or firm trial date set | | | 12/25/2011 |
| Case shall be resolved and judgment shall issue by 06/22/2012 | | | 06/22/2012 |

- The final pre-trial deadline is **not the scheduled date of the conference**.
- You will be notified of that date at a later time.
- Counsel for plaintiff must serve this tracking order on defendant before the deadline for filing return of service.

Dated: 09/01/2010

Thomas H. Driscoll Jr.
Clerk of the Court

Telephone: (978) 744-5500 ext. 377

Commonwealth of Massachusetts    2010-1859-A

Essex, ss                                                          Superior Court

                                                                  Case No. 09-400961

Daniel Pailes,

Plaintiff

Vs.

HSBC Mortgage Services,

Beneficial Mortgage Corporation, Defendant

FILED
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX
AUG 26 2010
CLERK

**Motion for a restraining order to prevent foreclosure sale on September 7, 2010**

1.1  The Plaintiff is Daniel now or formerly of 42 north End Blvd. Salisbury, Ma.

1.2  The Defendant is HSBC Mortgage Services, Beneficial Mortgage Corporation a Delaware corporation, a subsidiary or DBA, of The Corporation Trust Co. Corporation Trust Center 209 Orange St. Wilmington, Delaware 19801 and or Renee Longoria, representing HSBC mortgage services, Reneau Longoria

1.3  On or about 12/05 the defendant and the plaintiff entered into a refinance agreement. The essential terms and history are as follows:

On or about December 15, 2005, The Plaintiff signed an agreement with HSBC Mortgage Services for $169,000 in a refinance from his mortgage with Novastar Mortgage. In the terms of the agreement, the Plaintiff paid the underwriter of the loan, the Defendant, up front eleven months for the hazard and flood insurance in his Housing and Urban Development Settlement statement. **(See Exhibit 1 HUD Statement)** These funds were untimely disbursed to the insurance companies. The Defendant simply refused to pay them. In addition, on or about February 15, 2006, the Defendant forced placed insurances on totaling 4,587.84 **(Exhibit 3 Statement of Forced placed Insurances)** nearly quadrupling the amount agreed upon in the agreement signed for. The Defendant forced placed this insurance rate inaccurately. The Plaintiff's policy on both hazard and flood insurance was in place through March 31, 2006, overlapping from his last mortgage. The Defendant has refused to acknowledge the inaccuracies and the wrongful force placing of insurances and the consequential damages done to the Plaintiff, in terms of damage. There have been five investigations internally at HSBC and four from other governmental entities.

The Attorney General's office mediated with HSBC's Renee Longoria and proved the defendant forced placed insurances while the Plaintiff had active policies in place. **(See Exhibit 2 Attorney General Letter)** The issues raised by the Attorney General's office should respectfully provide the court with evidence that there are serious issues in the handling of this loan agreement and a hearing should be provided before a court or jury trial before irreparable harm and financial disaster are brought in the foreclosure sale of the Plaintiff's home.

1.4 On or about August 15, 2010, The Plaintiff was serviced with the notice of Foreclosure.

1.5 Because the wrongful forced placed insurances, unjust enrichment of loan and conversion Restatement (Second) of Torts § 222A (control over a chattel) of the loan agreement, the Plaintiff is proceeding with a wrongful foreclosure of the Plaintiff's home.

Wherefore, Plaintiff respectively requests that this Court:

Issue a temporary restraining order and pursuant to Mass.R.Civ.P. 65. ordering the Defendant, HSBC from proceeding in the foreclosure sale.

Respectively Submitted,

Daniel Pailes

August 27, 2010

42 North End Blvd.
Salisbury, Ma. 01952

978-335-8676

## Commonwealth of Massachusetts

Essex, ss                                                                 Superior Court 2010-1859

Case No. 09-400961

Daniel Pailes, Plainitff

vs.

HSBC Mortgage Services,

Beneficial Mortgage Corporation, Defendant

## Answer

### General Denial

Daniel Pailes, the Plaintiff and Defendant in counterclaim denies each and every allegation of the Defendant's complaint and calls upon the plaintiff to prove the same.

Respectfully Submitted

*Daniel Pailes*

Daniel Pailes

August 26, 2010

**FILED**
IN THE SUPERIOR
COURT
AUG 26 2010

4

## Commonwealth of Massachusetts

Essex, ss                                       Superior Court 2010-1859-A

Case No. 09-400961

Daniel Pailes, Plaintiff

vs.

HSBC Mortgage Services,

Beneficial Mortgage Corporation, Defendant

**FILED**
IN THE SUPERIOR COURT
FOR THE COUNTY OF ESSEX

AUG 2 6 2010

CLERK

### Motion of Short Order of Notice

Now Comes Daniel Pailes, and respectfully submits as follows:

I am the Plaintiff in this case. I was served on or about August 15, 2010. The Defendant has scheduled a Land Court, Service check on August 30, 2010 and a foreclosure sale for September 8, 2010.

Wherefore, the Defendant respectfully moves this Honorable Court to grant a short order of notice for a hearing to be held before the court before the sale date on September 7, 2010.

Respectively Submitted

Daniel Pailes

42 North End Blvd.
Salisbury, Ma. 01952

978-335-8676

August 26, 2010

# Exhibit 1

| L. Settlement Charges | | Paid From Borrower's Funds At Settlement | Paid From Seller's Funds At Settlement |
|---|---|---|---|
| 700. TOTAL SALES/BROKER'S COM. based on price @ % = | | | |
| Division of Commission (line 700) as follows: | | | |
| 701. | to | | |
| 702. | to | | |
| 703. Commission paid at Settlement | | | |
| 704. | to | | |
| 800. Items Payable In Connection With Loan | | | |
| 801. Loan Origination Fee 3.00 % | to Premium Capital Funding, LLC | 5,070.00 | |
| 802. Loan Discount % | to | | |
| 803. Appraisal Fee | to Levine Assoc $325 POC | | |
| 804. Credit Report | to Premium Capital Funding, LLC | 11.08 | |
| 805. Lender's Inspection Fee | to | | |
| 806. Mortgage Insurance Application Fee | to | | |
| 807. Application Fee | to Premium Capital Funding, LLC | 695.00 | |
| 808. Flood Determination | to Premium Capital Funding, LLC | 9.00 | |
| 809. Processing Fee | to Premium Capital Funding, LLC | 300.00 | |
| 810. Tax Service Fee | to Premium Capital Funding, LLC | 75.00 | |
| 811. Legal Review Service | to Gindi & Barone, LLP | 375.00 | |
| 812. Underwriting Fee | to Premium Capital Funding, LLC | 400.00 | |
| 813. | to | | |
| 814. | to | | |
| 815. | to | | |
| 900. Items Required By Lender To Be Paid In Advance | | | |
| 901. Interest from 12/19/2005 to 1/1/2006 @ 36.4623 /day | | 474.01 | |
| 902. Mortgage Insurance Premium for months to | | | |
| 903. Hazard Insurance Premium for years to Mass Fair Plan | | 26.00 | |
| 904. Flood Insurance Premium years to Hartford | | 40.00 | |
| 905. years to | | | |
| 1000. Reserves Deposited With Lender | | | |
| 1001. Hazard insurance 11 months@ 54.25 per month | | 596.75 | |
| 1002. Mortgage insurance months@ per month | | | |
| 1003. City property taxes months@ per month | | | |
| 1004. County property taxes 1 months@ 109.58 per month | | 109.58 | |
| 1005. Annual assessments months@ per month | | | |
| 1006. Flood Insurance 11 months@ 48.92 per month | | 538.12 | |
| 1007. months@ per month | | | |
| 1008. months@ per month | | | |
| 1009. Aggregate Adjustment | | (6.45) | |
| 1100. Title Charges | | | |
| 1101. Settlement or closing fee | to | | |
| 1102. Abstract or title search | to | | |
| 1103. Title examination | to | | |
| 1104. Title insurance binder | to | | |
| 1105. Document preparation | to | | |
| 1106. Notary fees | to | | |
| 1107. Attorney's fees | to North Shore Real Estate Law, LLC | 750.00 | |
| (includes above items numbers: | | | |
| 1108. Title insurance | to Chicago Title Ins Co(30%)/NSREL(70%) | 422.50 | |
| (includes above items numbers: | | | |
| 1109. Lender's Coverage: 422.50 INS AMT: 169,000.00 | | | |
| 1110. Owner's Coverage: INS AMT: | | | |
| 1110a | | | |
| 1111. MLC | to Town of Salisbury | 25.00 | |
| 1112. | to | | |
| 1113. | to | | |
| 1200. Government Recording and Transfer Charges | | | |
| 1201. Recording Fees: L-Mortgage(s) $175.00; Releases $75.00 | | 250.00 | |
| 1202. City/county tax/stamps: L-Mortgage(s) | | | |
| 1203. State tax/stamps: L-Mortgage(s) | | | |
| 1204. | | | |
| 1205. | | | |
| 1300. Additional Settlement Charges | | | |
| 1301. Survey | to | | |

# Exhibit 2



# THE COMMONWEALTH OF MASSACHUSETTS
## OFFICE OF THE ATTORNEY GENERAL
ONE ASHBURTON PLACE
BOSTON, MASSACHUSETTS 02108

MARTHA COAKLEY
ATTORNEY GENERAL

(617) 727-2200
www.mass.gov/ago

Reneau Longoria, Esq.
100 Cummings Center
Ste. 225
Beverly, MA 01915

December 4, 2009

Re: HSBC Mortgage Services Account  (Daniel Pailes)

Dear Reneau:

I am writing in response to Stasia Bailey's letter of August 4, 2009, which was written in response to my letter of July 13, 2009. I understand that you recently had a conversation with Glenn Kaplan of my Office concerning Mr. Pailes' account. I am writing this letter in the context of the Attorney General's voluntary mediation program. I do not represent Mr. Pailes. In this letter, I will attempt to discuss HSBC's explanations for its position, the defenses raised, and the issues that I felt were not addressed by Ms. Bailey's most recent response.

First off, I am enclosing a copy of Mr. Pailes' 2005-2006 homeowners insurance policy's dec page, evidencing that the policy was indeed effective between March 31, 2005 and March 31, 2006. I hope that this will put to rest any remaining doubt for HSBC as to the fact that Mr. Pailes had active homeowners coverage: (i) at the time that HSBC contacted him stating that his policy had expired and (ii) at the time that HSBC force placed a $2,356 hazard policy for him.

Indeed, the homeowners and flood insurance binders in HSBC's possession at the time of the force placements reflected that Mr. Pailes had already paid $625 of the $651 premium reportedly due on his 2005-2006 MPIUA homeowners policy and $547 of the $587 premium reportedly due on his 2005-2006 Hartford flood policy at the time his loan closed with Premium Capital Funding. Further payments were remitted to Mr. Pailes' insurance carriers through Premium Assignment Corporation's closing attorney, Jay Rudolph, in an effort to pay Mr. Pailes' policies off in full.[1] Additionally, as

---

[1] On 12/15/2005, the date of the origination of Mr. Pailes' loan, at the request of Premium Capital Funding, a change was made to the dwelling coverage limit of Mr. Pailes' MPIUA policy, effective 3/21/2005 through 3/21/2006 that appears to have resulted in an $11 increase in premium, (though I believe this was initially calculated as a $26 increase in premium by the MPIUA's agent). I believe that a similar coverage increase was required on the Hartford policy, resulting in the policy premiums not being paid in full at closing. Premium Capital Funding tried to pay these additional insurance premiums to the carriers through its closing attorney, Mr. Jay Rudolph of North Shore Real Estate Law. The $26 check sent to the MPIUA by North Shore Real Estate

1

reflected on the HUD-1 for Mr. Pailes' loan, Mr. Pailes deposited $596.75 toward *future* premiums on his homeowners policy and $538.12 toward *future* premiums on his flood insurance policy at the time of the closing. During the term of his loan, Mr. Pailes made additional monthly payments to Premium Capital Funding containing *further* escrowed insurance funds. According to the Initial Escrow Account Disclosure Statement provided by Premium Capital Funding to Mr. Pailes, which I have enclosed for your review, Premium Capital Funding was to expend $651.00 in March 2006 from Mr. Pailes' escrow account for payment of his 2006-2007 hazard insurance and $587.00 for payment of his 2006-2007 flood insurance. HSBC took over servicing of Mr. Pailes' account on February 7, 2006, before this occurred.

In its responses to various government agencies, including its most recent response to this Office, with regard to HSBC's force placement of homeowners coverage for Mr. Pailes in 2006, HSBC has stated:

> *we have confirmed that the Mortgagee Clause [on Mr. Pailes' policy] was not updated to reflect HSBC Mortgage Services and the renewal notice was sent directly to Mr. Pailes and Dooley Insurance Agency.*

In its most recent letter to this Office, HSBC even invited me to call Mr. Dooley (with whom I have already had contact) to confirm this fact. I am troubled by this response because I do not understand how HSBC's actions in force placing coverage for Mr. Pailes or sending him letters containing errant policy expiration dates were related to the fact that HSBC did not receive renewal notices from Mr. Pailes' insurance carriers. Mr. Pailes' insurance policies were *active* and *in effect* at the time HSBC force placed policies for Mr. Pailes and at the time HSBC sent him notices stating that his policies had expired. I therefore have difficulty understanding why the question of how or why Mr. Pailes' policies *ultimately* expired is material to the questions of why HSBC sent letters to Mr. Pailes suggesting that his active policies had expired and the fairness of HSBC's actions in so doing.[2]

---

Law on 12/22/2005, was an attempt to pay the agent's calculation of the increase in premium attributable to the increased dwelling limit. The MPIUA refused this check as an overpayment, and waived the $11 premium due without cancelling the policy. The $40 that Mr. Rudolph sent to the Hartford appears to have been accepted by the Hartford. Mr. Pailes has reported to this Office that HSBC's initial investigation of his account resulted in a suggestion by HSBC that the closing attorney, Jay Rudolph was to blame for the problems with Mr. Pailes' account. Mr. Pailes reports that he therefore filed a complaint with the Massachusetts Bar Association. Mr. Rudolph's response to that complaint (which included yet another set of insurance binders) is enclosed for your review.

[2] As an aside, I would note that despite the fact that HSBC was collecting insurance premiums from Mr. Pailes, I have not seen any evidence indicating that HSBC took steps to inform Mr. Pailes (prior to its 2/25/2006 letter which stated Mr. Pailes' homeowners policy had expired on 2/9/2006) that he needed to update his insurance policies to reflect HSBC as mortgagee so that HSBC would receive future premium bills. At a minimum, it seems that HSBC might have included such information in the "Welcome" package that HSBC provided to Mr. Pailes when HSBC took over the servicing of his loan. HSBC's apparent failure to provide such information up front is particularly concerning given that HSBC was collecting escrowed insurance premiums from Mr. Pailes and was responsible for paying those funds to Mr. Pailes' insurance carriers. I would also point out that it appears that HSBC itself claims that its failure to receive a renewal notice has not prevented HSBC from making renewal payments to carriers. HSBC's most recent letter to me stated that HSBC paid Mr. Pailes' flood and homeowners policy in 2008 without a renewal notice: "*Our records indicate that HSBC Mortgage Services did not receive renewal notices prior to the February 2, 2008 expiration date for the flood insurance policy and the February 16, 2008 expiration of the hazard insurance policy. However, HSBC Mortgage Services contacted Hartford and Massachusetts Property Insurance Underwriting Association to obtain the required renewal information. As a result, HSBC Mortgage Services issued check number 20001319 in the amount of $296.00 on February 5, 2008 for the renewal of the flood insurance policy. Additionally, we issued check number 20001330 in the amount of $1,016.00 on February 21, 2008 for the renewal of the hazard insurance policy.*"

2

Indeed, in response to my letter, the only explanation HSBC offered for its actions in sending such letters to Mr. Pailes, seems to be the following statement:

> *Please note that HSBC Mortgage Services acquired the above referenced account on February 7, 2009 (sic), as HSBC Mortgage Services does not accept temporary binders as evidence of the insurance, the enclosed correspondence was mailed to Mr. Pailes requesting that he provide evidence of insurance.* [3]

Stating that HSBC did not accept the proof of insurance provided by Mr. Pailes' insurers and accepted by his originating lender does not indicate that HSBC had any reason to believe that the binders were incorrect. Moreover, it seems that this explanation conflicts with what HSBC repeatedly told Mr. Pailes during the time period leading up to the force placements. HSBC's February 25, 2006 to Mr. Pailes letter did not state that HSBC does not accept binders as evidence of insurance, nor did it state that Mr. Pailes' policy needed to be updated to reflect HSBC as mortgagee. Rather, the letter listed an *"expiration date"* of "2/9/2006" and stated:

> *During a recent review of our loan file, we found that the insurance coverage for the property listed above has either cancelled or expired or your previous servicer did not provide us with coverage information.*

HSBC followed up the February 25, 2006 letter to Mr. Pailes with a letter to Mr. Pailes dated March 11, 2006 which stated: *"Our records indicate that your current fire/homeowners insurance policy expired on 2/9/2006."* HSBC sent similar letters to Mr. Pailes concerning his flood insurance policy, indicating that the flood policy had expired on January 13, 2006, even though the policy was actually active until March 23, 2006, as set forth in the insurance binder in HSBC's possession (which included a policy numbers, carrier name, effective date, and amount paid).

In the absence of any affirmation that or explanation as to why HSBC believed that Mr. Pailes homeowners policy expired on February 9, 2006 and his flood policy on January 13, 2006, HSBC seems to be saying that it wrote Mr. Pailes these letters even though HSBC had no reason to believe that his policies had actually expired, let alone that they expired on the dates indicated in HSBC's letters.

Naturally, these letters were upsetting and confusing to Mr. Pailes, who understood them to mean that HSBC had failed to remit the premiums that he had paid and was paying to HSBC as part of his monthly mortgage payments, causing his policies to cancel. Ms. Bailey stated in her recent letter to me that HSBC sent the above referred letters to Mr. Pailes *"requesting that he provide evidence of insurance."* However, given that HSBC's letters led Mr. Pailes to believe that he did not have active insurance, Mr. Pailes did not believe that he *could* provide HSBC with evidence of having active insurance (short of buying new policies, which he could not afford to do having pre-paid his insurance premiums to HSBC as described in the third paragraph of this letter).

---

[3] HSBC acquired this account in February, 2006.

3

HSBC's most recent letter to me also cites to the fact that its February 25, 2006 letter to Mr. Pailes invited Mr. Pailes to call HSBC's "... *Customer Care at (866) 456-5010.*" Mr. Pailes reports that *he did call* HSBC, though he does not recall whether he called the specific number listed in the letter. At the time he reports making this call, he indicated that he was trying to determine why his premiums had not been paid, and to get HSBC to start paying them again so that his policies would go back into effect. Mr. Pailes notes that when he called HSBC, a staff member told him that she could not see from the computer why HSBC was not remitting Mr. Pailes' insurance premiums to his carriers and told him that HSBC was still remitting his escrowed tax payments to the town of Salisbury.

If indeed HSBC's only reason for telling Mr. Pailes that his active insurance policies had expired is that HSBC did not accept the proof of insurance that his original lender and servicer accepted, Mr. Pailes feels that HSBC should have clearly articulated this to him rather than sending him misleading letters that stated that his active insurance policies (for which HSBC was supposed to be paying premiums) were no longer in effect. While Mr. Pailes believes that it is one thing to ask a consumer to jump through hoops to accommodate the sale or servicing transfer of his or her loan, he feels that it is entirely another thing to fail to provide any clear instruction to a consumer, to send the consumer letters containing misinformation, to then require the consumer to pay nearly $5,000 for force placed insurance, and in so doing, to nearly double the consumer's required monthly payment thereby setting the consumer on the road to foreclosure.

Had HSBC contacted Mr. Pailes stating that HSBC needed Mr. Pailes to provide copies of his insurance policies, without at the same time stating that his insurance policies had expired, Mr. Pailes believes that he would have been able to appropriately respond to that request. Alternatively, HSBC could have contacted the carriers at issue as it purports to have done in 2008 concerning Mr. Pailes' flood policy. At the time of the force placements in 2006, HSBC had full information from the insurance binders concerning Mr. Pailes' carrier's names, policy numbers, coverage effective dates, and amounts paid as well as closing documents and a servicing record from Premium Capital Funding.

On a related issue, in response to my questions about HSBC's apparent failure to conduct annual escrow analysis and its continued attempts to bill Mr. Pailes for increased escrow demands that appear to be based on cancelled force-placed policies, HSBC stated:

> *Please be advised the amount of the monthly escrow was not decreased prior to the payment received on August 17, 2007, to ensure that there was sufficient funds in the escrow account to pay future taxes and insurance.*

I have difficulty understanding how there could have been an escrow shortage that required continued increased escrow payments from Mr. Pailes *at such a high level* given that HSBC had cancelled the second round of force placed policies well before August, 2007. As stated in my prior letter:

- On 2/14/2007, Mr. Pailes made a deposit on a MPIUA homeowner's policy effective 2/16/2007-2/16/2008 and obtained a policy that again,

4

# Exhibit 3

HSBC MORTGAGE SERVICES
PO BOX 9068
BRANDON FL 33509

1-800-333-7023

6958

DANIEL B BAILES
42 NORTH END BOULEVARD
SALISBURY MA 01952

Your Loan Number:
Date: 05/18/06

### Annual Escrow Account Disclosure Statement - Projection

Please review this statement closely - Your mortgage payment may be affected. This statement tells you of any changes in your mortgage payment, any surplus refunds, or any shortage or deficiency that you must pay. It also shows you the anticipated escrow activity for your escrow cycle beginning July,2006 and ending June,2007.

**Anticipated Payments From Escrow**

| | | |
|---|---|---|
| FORCE PLACE INS | 2,356.00 | |
| FORCE PLACE FLD | 2,231.84 | |
| TOWN/BORO/TNSHP | 1,332.88 | |
| TOTAL | 5,920.72 | |
| Periodic Payment to Escrow | 493.39 | (1/12 of "Total from Escrow") |

**Anticipated Escrow Activity - July,2006 through June,2007**

| Month | Anticipated Payments to Escrow | Anticipated Payments from Escrow | Description | Escrow Balance Comparison Anticipated | Required |
|---|---|---|---|---|---|
| | | Actual starting balance ==> | | 2,619.31- | 2,627.16 |
| Jul.06 | 493.39 | 0.00 | | 2,125.92- | 3,120.55 |
| Aug.06 | 493.39 | 333.22 | TOWN/BORO/TNSHP | 1,965.75- | 3,280.72 |
| Sep.06 | 493.39 | 0.00 | | 1,472.36- | 3,774.11 |
| Oct.06 | 493.39 | 0.00 | | 978.97- | 4,267.50 |
| Nov.06 | 493.39 | 333.22 | TOWN/BORO/TNSHP | 818.80- | 4,427.67 |
| Dec.06 | 493.39 | 0.00 | | 325.41- | 4,921.05 |
| Jan.07 | 493.39 | 2,231.84 | FORCE PLACE FLD | 2,063.86- | 3,182.61 |
| Feb.07 | 493.39 | 2,356.00 | FORCE PLACE INS | 4,259.69-ALP | 386.78 RLP |
| | | 333.22 | TOWN/BORO/TNSHP | | |
| Mar.07 | 493.39 | 0.00 | | 3,766.30- | 1,480.17 |
| Apr.07 | 493.39 | 0.00 | | 3,272.91- | 1,973.56 |
| May.07 | 493.39 | 333.22 | TOWN/BORO/TNSHP | 3,112.74- | 2,133.73 |
| Jun.07 | 493.39 | 0.00 | | 2,619.35- | 2,627.12 |

**Determining Your Required Escrow Balance**

If the Anticipated Low Point balance (ALP) is less than the Required Low Point balance (RLP), then you have an escrow shortage....

Your escrow shortage is.... $ 4,646.47-

**** Continued on Next Page ****



## Commonwealth of Massachusetts

Essex, ss

Superior Court  10-1859-A

Case No. 09-400961

Daniel Pailes, Plaintiff

vs.

HSBC Mortgage Services,

Beneficial Mortgage Corporation, Defendant



FILED
IN THE ...
FOR THE ... OF ESSEX
AUG 26 2010
CLERK

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the day of August 26, 2010, a true and correct copy of the Plaintiff's Motion for a Restraining Order to Prevent Foreclosure Sale on September 8, 2010, Motion of Answer, General Denial, Motion of Short Order of Notice by first class United States mail, marked for delivery to:

Reneau Longoria, Esq.
100 Cummings Center
Ste. 225
Beverly, Ma. 01915

HSBC Mortgage Services,
Beneficial Mortgage Corporation
a Delaware corporation, a subsidiary or DBA, of
The Corporation Trust Co. Corporation Trust Center
209 Orange St. Wilmington, Delaware 19801

Respectfully submitted,

Daniel Pailes

42 North End Blvd. Salisbury, Ma. 01952

978-335-8676

August 26, 2010