

**United States District Court**

**District of Massachusetts**

**Civil Action No. 10-11509-GAO**

**Daniel Pailes,**

**Plaintiff**

**V.**

**HSBC Mortgage Services and Beneficial Mortgage Corporation, Defendants**

Now comes Daniel Pailes in response to Judge O'Toole's Order and Opinion July 18, 2011. The Plaintiff Daniel Pailes is filing this amended pleading in response to the Motion to Leave granted by Judge O'Toole. The Plaintiff amends his complain as follows:

**Count 1** **Breach of Contract**, As a direct result of the defendant breach of contract, The plaintiff Daniel Pailes files the following elements

of Damage under Breach of Contract.

**Count 1-1** The Plaintiff Daniel Pailes, 42 north End Blvd Salisbury, Ma.

**Count 1-2** The Defendant HSBC Mortgage Services

**Count 1-3** On February 15, 2006, the Bank breached the statutory and contractual

obligations of their contract by force placing 4.7000 dollars on the

**Count 1-4  As a direct result of the breach of the statutory and contractual obligation,** the plaintiff harmed and has suffered under the following elements of Breach of Contract.

A.  **Element** Breach of Good Faith and Fair dealing

B.  **Element** Reasonable Expectation of Interest

C.  **Element** Restitution in Favor of Party in Breach

D.  **Element** Failure to Perform (Performance)

E.  **Element**  Reasonable  Expectation of profits from the contract and its loss

F.  **Element** Quiet Enjoyment of the Home

G.  **Element** Loss of the use of equity and home improvement (expectation)

H.  **Element** Consequential Damages  (Cost of Credit)(Business Loss of Profits)

I.  **Element** Emotional Disturbance

J.  **Element**  Discharge of Duty and or Obligation to the Defendant

K.  **Element** Count National Flood Insurance Violation:

**Count 2 Escrow Account Damage:** As a direct result of this contractual breach in their duty as an agent, fiduciary duty and breach of terms specified in the escrow agreement within the contract, the bank breached the agreement by misappropriating funds from Mr. Pailes's escrow account without his authority, disburse funds not agreed upon in the escrow agreement and did not disburse the funds in a timely manner as spelled out in the contract.

**Count 2  A.  Element Failure of  Fiduciary Duty and Escrow Misappropriation.**

**Count 3    Interest Damage:**  As direct result of the breach of contract in the statutory and contractual agreement, the defendant unjustly enriched itself through self dealing. Unjust enrichment has been considered interest by the Supreme Court in the cases quoted below and unjustly enriching Hazard and Flood insurances has also been considered interest the cases as Mr. Pailes pointed to in his amended pleading dated October 24, 2010. Richardson, 141 F.3d at 1231-32. As Mr. Pailes points  to in Smiley Vs Citibank 517 U.S. 735   for Unjust enrichment, misc. fees and late Fees, and therefore considered interest.

**Count  3-A  Interest and the Reasonable Expectation of interest** on loss from December 2005-now and in the future.

**Count  3-B  Interest Damage**- Compounding Interest (Usury Violation 4.6.1.2)

**Count 4:    Breach of Warranty of Deed**

**Count 5: Recoupment claim for credit repair for inaccurate reporting : Federal common Law claim.**

**Count 6:  Self Dealing 93A Unfair and Deceptive Practices -** new claim based on the action to purchase my home wrongfully through a Breach of Contract case. Amended complaint from the date of sale to themselves 93A Claim, amending the claim that was dismissed as being untimely. The action has taken place within the time allotted to state

a claim

**Count 1** As a result of the Bank's Breach of Contract Daniel Pailes has suffered the following Damages: The fair amount of this loss is 169,000.00 the original amount of the bargain and the agreement

**Breach of Contract: Restatement of the Law Contracts 2d§ 205  e. Good faith in Enforcement.**

The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses. See, e.g., §§ 73, 89. The obligation is violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts. It also extends to dealing which is candid but unfair, such as taking advantage of the necessitous circumstances of the other party to extort a modification of a contract for the sale of goods without legitimate commercial reason. See Uniform Commercial Code § 2-209. Other types of violation have been recognized in judicial decisions: harassing demands for assurances of performance, rejection of performance for unstated reasons, willful failure to mitigate damages, and abuse of a power to determine compliance or to terminate the contract.

The duty of good faith and fair dealing between parties to a contract is based both in common law. Restatement (Second) of Contracts  205 (1979) American Bankers' Ins. Co. vs. Wells 819 So.2d 1196 1206-1207 Miss. 2001 The duty of Good faith is imposed on parties to an existing contract **"to prohibit improper behavior in performance and enforcement"** on that contract. Find performance case The policy of good faith and fair dealing and doctrine is to exclude conduct which violates community standards of decency, fairness or reasonableness" Restatement Second of Contracts 205. A (1979). Generally, its "bad faith" of performance of specified terms in the contract. A borrower may base claim upon general duty of good faith arising out of the law of

The covenant of good faith and fair dealing, which is implied in every contract in Massachusetts, requires parties to a contract "to deal honestly and in good faith in both the performance and enforcement of the terms of their contract.]" Hawthorne's, Inc. v. Warrenton Realty, Inc., 414 Mass. 200, 606 N.E. 2d 908, 914 (Mass. 1993). The purpose of the implied covenant is to ensure that neither party interferes with the ability of the other to enjoy the fruits of the contract and that when performing the obligations of the contract, the parties remain faithful to the intended and agreed expectations' of the contract. FAMM Steel, Inc. v. Sovereign Bank, 571 F.3d 93, 99 (1st Cir. 2009).

**Restatement of the Law Contracts 2d§ 205       Duty of Good Faith and Fair Dealing**
CONSIDERATIONS OF FAIRNESS AND THE PUBLIC INTEREST  **Every contract imposes upon each party a duty of \ good faith and fair dealing in its performance and its enforcement.** Meanings of "good faith."Good faith is defined in Uniform Commercial Code **§ 1-201(19)** as "honesty in fact in the conduct or transaction concerned." "In the case of a merchant" Uniform Commercial Code § 2-103(1)(b) provides that good faith means "honesty in fact and the observance of reasonable commercial standards of fair dealing in the trade." The phrase "good faith" is used in a variety of contexts, and its meaning varies somewhat with the context. Good faith performance or enforcement of a contract emphasizes faithfulness to an agreed common purpose and consistency with expectation of the other party, 'it excludes a variety of types of conduct characterized involving "bad faith" because they violate community standards of decency, fairness or reasonableness. The appropriate remedy for a breach of the duty of good faith also varies with the circumstances

**b. Good Faith Purchase.** In many situations a good faith purchaser of property for value can acquire better rights in the property than his transferor had. See, e.g., § 342. In this context "good faith" focuses on the honesty of the purchaser, as distinguished from his

**Good Faith Performance.** Subterfuges and evasions violate the obligation of good faith in performance even though the actor believes his conduct to be justified. But the obligation goes further: bad faith may be "overt or may consist of inaction", and fair dealing may require more than honesty. A complete catalogue of types of bad faith is impossible, but the following types are among those which have been recognized in judicial decisions: evasion of the spirit of the bargain, lack of diligence and slacking off, willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance."

## Restatement of the Law Contracts 2nd §205 pg. 102

e. **Good faith in enforcement.** The obligation of good faith and fair dealing extends to the assertion, settlement and litigation of contract claims and defenses. See, e.g., §§ 73, 89. The obligation is violated by dishonest conduct such as conjuring up a pretended dispute, asserting an interpretation contrary to one's own understanding, or falsification of facts. It also extends to dealing which is candid but unfair, such as taking advantage of the necessitous circumstances of the other party to extort a modification of a contract for the sale of goods without legitimate commercial reason. See Uniform Commercial Code § 2-209. Comment 2. Other types of violation have been recognized in judicial decisions: harassing demands for assurances of performance, rejection of performance for unstated reasons, willful failure to mitigate damages, and abuse of a power to determine compliance or to terminate the contract. For a statutory duty of good faith in termination, see the federal Automobile Dealer's Day in Court Act, 15 U.S.C. §§ 1221-25 (1976). See Fortune

v. National Cash Register Co. 373 Mass. 96, 364 N.E. 2d 1251 (1977).

**Elements of Breach of Contract:**

To establish a breach of contract under Massachusetts law, a plaintiff must demonstrate that: 1) a valid, binding agreement exists; 2) the defendant breached the terms of the agreement; and 3) the plaintiff suffered damages from the breach.

and in the same case, a breach of contract, unilaterally accrue expenses, some claims to fall outside the contract". 2011 Mass. Super. Lexis 121 Massachusetts Education and Government Association Property & Casualty Self Insurance Group, Inc. vs. Town of Saugus

**Reliance Restatement on Contracts 2nd §351**

"There is no requirement of foreseeability with respect to the injured party.'

b. ' General" and "special" damages. Loss that results from a breach in the ordinary course of events is foreseeable as the probable result of the breach. See Uniform Commercial Code § 2-714(1). Such loss is sometimes said to be the "natural" result of the breach, in the sense that its occurrence accords with the common experience of ordinary persons.

**Admission of Breach Contract:** The opposition in open court admitted that they did not pay his Hazard and Flood insurance and removed the forced placed insurance amounts by saying they reimbursed Mr. Pailes. No, they did not reimburse Mr. Pailes any of these funds. In addition, they admitted it nearly three years after the incident occurred. Mr. Pailes performed due diligence in having 5 government investigations to have the breach worked out. The Defendant had ample

| House Purchased for December | 2005 | 169,000.00 |
|---|---|---|
| Fair Market Value | 2005 | 275,000.00 |
| Fair Market Value Now | 2011 | 125,000.00 |
| Price Sold in Wrongful Self-Dealing | 2010 | 100,000.00 |

**Element B.  Reasonable Expectation of Interest**:  Breach of Contract  Restatement of the Law Contracts 2nd § 344   Purposes of Remedies:  Judicial Remedies under the rules stated in this Restatement serve to protect one or more of the following interests of a promisee:

A) his "expectation of interest", which is his interest in having the benefit of his bargain by being put in as good position as he would have been in had the contract been performed.

B) His "reliance interest", which is his interest in being  reimbursed for loss caused by reliance on the contract by being put in as good a position as he would have been  in had the contract not

C) His restitution interest", which is his interest in having restored to him any benefit he conferred on the other party.

**Breach of Contract  Restatement of the Law Contracts 2nd § 347**

§ 347.   Measure of Damages in General

(c) any cost or other loss that he has avoided by not having to perform.

a.  Expectation interest. Contract damages are ordinarily based • on the injured party's expectation interest and are intended to give him the benefit of his bargain by awarding him a sum of money that will, to the extent possible, put him in as good a position as he would have been in had the contract been performed. See § 344(1)(a). In some situations the sum awarded will do this adequately as, for example, where the injured. party has simply had to pay an additional amount to arrange a substitute transaction and can be adequately compensated by damages based on that amount. In other situations the sum awarded cannot adequately compensate the injured party for his disappointed expectation as, for example, where a delay in performance has caused him to miss an invaluable opportunity. The measure of damages stated in this Section is subject to the agreement.

In addition to **Restatement of the Law Contracts 2nd § 347 in § 351**

(2) Loss may be foreseeable as a probable result of a breach because it follows from the breach.

**Element C    Breach of Contract  Restatement of the Law Contracts 2nd § 374.**

**Restitution in Favor of Party in Breach**

1. Subject to the rule stated in Subsection (2), if a party justifiably refuses to perform on the ground that his remaining duties of performance have been discharged by the other party's breach, the party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or

as liquidated damages is reasonable in the light of the anticipated or actual loss caused by the breach and the difficulties of proof of loss.

And or in alternative within this element of Breach of Contract   376

# Element C: Breach of Contract Restatement of the Law Contracts 2nd § 376.
## Restitution When Contract is Void able

A party who has avoided a contract on the ground of lack of capacity, mistake, misrepresentation, duress, undue influence or abuse of a **fiduciary relation** is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.

a. Recovery of benefit on avoidance. A party who exercises his power of avoidance is entitled to recover in restitution for any benefit that he has conferred on the other party through part performance of or reliance on the contract. The benefit from his part performance includes that resulting from the use by the other party of whatever he has received up to the time that it is returned on avoidance. Furthermore, under the rule stated in § 384, a party seeking restitution must generally return any benefit that he has himself received. The rule stated in this Section applies to avoidance on any ground, including, misrepresentation (§ 164), duress (§ 175), undue influence (§ 177) or abuse of a fiduciary relation (§ 173). Uncertainties in measuring the benefit, however, are more likely to be resolved in favor of the party seeking restitution if the other party

engaged in misconduct as in cases of fraudulent misrepresentation duress or undue

mathematical calculation from standard fixing contract. Interest is allowed on amount of debt or money value from time performance was due, after taking deduction to which defendant may be entitled, but upon breach of other contract, interest may be allowed in discretion o the court, if justice requires it, on amount that would have been just compensation if it had been paid when performance was due. Doucette v Vincent 194 F2d. 834

1. Failure to pay hazard and flood insurance: $ 656.00 Hazard $580.00 Flood insurance as contracted for in the original agreement. The bank's failure to make any payments in the first year. 1,236.00 plus interest at 7.3 % = 90.22. Total amount of damage for not paying agreed upon funds. In addition, the Forced placed amounts totaling $4,700 was placed upon the plaintiff while the plaintiff had active insurance policies. He suffered the loss of both amounts. The bank's non performance and unjust enriching based on breaching the agreement.

**Element E : Reasonable Expectation of Profits from the Contract and its loss: Loss of Profits Business interruption: The Plaintiff has suffered harm, he had a business and the property is in commercially zone area and used part of the property for his business use.** Commercially zoned and self employed loss of profits damages arising out of the loss of the use of the home 2005-2011 and into the future for thirty four more years which would have been the life of the contract if completed correctly. The reasonable expectation $5,000 from the loss of the use of the house is. Projected net profits from financials. Loss of Profits: Business 5,000.00 net profit per year times 5 months and eight months 29.000.00.

**Contract agreement 30 years time x $5,000.00 very reasonable estimate of profits $150,000.00**

**Loss in Value of Performance. In addition the plaintiff has suffered the loss of equity of home improvement. (Expectation)**

1)      If a breach delays the use of property and loss in value to the injured party is not proved with reasonable certainty, he may recover damages based on the rental value of the property or on the interest on the value of the property.

**Element H. Consequential Damages, Incidental, Costs, Fees, Expenses under a Breach of Contract: U.C.C. 2 § 713      Under Breach in Reliance    Incidental Damages caused from the Breach may be included.**

**1. Storage Costs for household goods placed in storage:** to prove the plaintiff is under duress from this wrongful foreclosure and Breach of contract Costs for the storage is been 90.00 per month for 10 months now from this date August 31, 2011.  **Paid by relative who can testify to paying this amount per month will have evidence at trial $900.00**

**2. Moving Costs after Wrongful Foreclosure based on Breach of Contract:**

$270.00 per day 5days                                                      **$1,350.00**

Moving personal goods during foreclosures or wrongful foreclosures is necessary when dealing with the defendant see case Laflamme vs HSBC 2010 U.S. Dist. Lexis 71915 where the defendant maliciously threw away the plaintiff personal belongings. In addition, it is a fact Mr. Pailes' property was broken into with a police report which is

**3. Value of Credit from 2005 December to Present and in the future:**  The Plaintiff

had 615 Credit Score at the commencement of the Contract between plaintiff and

defendant. The Value of Credit is a Measured by one's credit score. Mr. Pailes has put

forth his damage claims under federal recoupment claim. Here he will give an reasonable

damage assessment of the worth per year the Defendant damaged him in his credit

worthiness based on the breach and Mr. Pailes having to pay inflated rates which affected

other areas of bills and loss of opportunity, quiet enjoyment of the home and reasonable

expectation of interest and use of his equity.


The plaintiff's 615 Credit Score times $35,000.00 annual income with the Mortgage debt

169,000.00 and Student Loan debt  $26,000.00 and the fair market value of the home in

2005 December through February 2006. $230,000.00. Mr. Pailes contends the defendant

through breach caused harm of his credit worthiness. If, the breach had not taken place,

Mr. Pailes's purchasing power would have been very reasonably $8,000.000 per year. Not

having access to that equity, reseasonable expectation of interest and quiet enjoyment of

the home, Mr. Pailes was unable to use the correctly being unable to winterize his home

properly or use the property for the opportunity he made the contract for.


**Purchasing Power without being breached in Contract:**

$8,000.000 times 5 years and nine months and accrues as the trial progresses, if able to

stay in home.          Present Damage                      =  **$47,200.00**

**Plumbing Costs:** Burst pipes in home and having the periodic hardship of no water.

|  |  |
|---|---|
|  | = $1,870.00 |
| **Water Costs Meter change outs due breach** | = $780.00 |

| | |
|---|---|
| **Gas shut off of service 2007 and now 2011 to breach** | = $690.00 |
| **Boiler Replacement, Opportunity Cost** | = $9,000.00 |

**Relocation Expenses apartment and or rent expenses if provided with wrongful**

**foreclosure   $1,220.00 plus interest 7.3% per month $89.06       = $1,309.06**

The $1220.00 is on or about the amount Mr. Pailes paid in his mortgage per month before the escrow amount. Pailes is adding the medium interest that was most prevalent from the commencement of the loan when the breach occurred as a measure of reasonable costs in living expenses incurred by obtaining a new place to live, with no decision in the case imminent the possibility of securing a place to live is a reasonable damage cost, being foreseeable

Many of these damage claims were presented in Mr. Pailes's counterclaim in his summary process hearing case that is on-going. In the last hearing for this case Justice Kerman stated to Mr. Pailes, " these damage claims should be filed in your federal court

**Restatement Breach of Contract Restatement of the Law Contracts 2nd § 353.   Loss Due to Emotional Disturbance**

Recovery for emotional disturbance will be excluded unless the breach also caused bodily harm or

the contract or the breach is of such a kind that serious emotional disturbance was a particularly

likely result.

In the second exceptional situation, the contract or the breach is of such a kind that serious emotional disturbance was a particularly likely result.  Breach of such a contract is particularly likely to cause serious emotional disturbance. Breach of other types of contracts, resulting for example in sudden impoverishment or bankruptcy, may by chance cause even more severe emotional disturbance.

**Element J  Discharge of Duty and or Obligation to the Defendant  Discharge of Loan Obligation**

2008 Vt. 120   TD Banknorth, N.A. vs. Department of Taxes

Interest Damage through the Breach of Contract: In the Breach of Contract , the Defendant unjustly enrich themselves through the misappropriation of interest gained the through the Breach of Contract. Below are cases that demonstrate that forced placed insurance gained wrongfully by the defendant and unjust fees are considered interest by the Supreme Court and the 3rd circuit.  The following demonstrate a claim on interest damage claimed by the plaintiff.

**Interest Case on Forced Placed Insurance:** This conclusion was based in part on the Seventh Circuit's determination that force placed insurance is more analogous to the Regulation's exclusion of "insurance guaranteeing repayment of any extension of credit" from interest than it was to those footnote, the Seventh Circuit specifically stated that this decision does not "reach the issue of whether any mark-up or profit which a bank may earn off of forced placed insurance is interest". Richardson vs. National Bank 141 F.3d at 1231-32.

**Interest:** Late Fees and Unjust enrichment are considered interest by the Supreme Court, **"**The Court granted the petition and affirmed, holding that the late payment fees were interest and therefore respondent could charge fees that were lawful in the bank's home state but prohibited by petitioner's home state". 517 U.S. 735,  Smiley, Barbara v. CITIBANK (SOUTH DAKOTA).

**Interest Case on Forced Placement:** This conclusion was based in part on the Seventh Circuit's determination that force placed insurance is more analogous to the Regulation's exclusion of "insurance guaranteeing repayment of any extension of credit" from interest than it was to those items specifically enumerated as "interest." Richardson, 141 F.3d at 1231-32. However, in the footnote, the Seventh Circuit specifically stated that this decision does not "reach the issue of whether any mark-up or profit which a bank may

**General Complaint and Claims stated for Interest Damage Under Massachusetts Law.**

First Circuit cases to state claim 67 Damage **Interest:** C.A.1 (Mass.) 1955. Interest on a verdict from date of writ is an item of substantive damages awarded "in order that the plaintiff may be more fully and justly compensated for the wrong complained of". Sylvania Elec. Products v. Barker, 228 F.2d 842, certiorari denied 76 S.Ct. 475, 350 U.S. 988, 100 L.Ed. 854.

**Interest:** D.Mass. 1973. Interest is usually awarded whenever damages lawfully due are withheld, unless exceptional circumstances exist justifying refusal, such as long delay in pressing the claim.Algonquin Deep Sea Research Corp. v. Perini Corp., 353 F.Supp. 561.

**Interest:** Mass. 1981. Interest is awarded by law so that person lawfully deprived of use of money should be made whole for his loss. Perkins School for Blind v. Rate Setting Commission, 423 N.E.2d 765, 383 Mass. 825.

**Interest:** Mass. 1939. In suit to reach and apply shares of stock in payment of debt, plaintiff was entitled to interest though suit was not brought for six years and because of attorney's negligence was not prosecuted to final decree for ten years.
Borst v. Young, 18 N.E.2d 544, 302 Mass. 124.

**Restatement of the Law Second § 354 Interest as Damages** 1. If the breach consists of to pay a

The Forced placed amounts totaling on or about $4,700 was placed upon the plaintiff while the plaintiff had active insurance policies. He suffered the losses directly from the bank's Breach had absorb the amount in the breached contract. The bank's non performance and unjust enriching based on breaching the agreement. Plaintff is Charging the defendant with the wrongfully force placing on or about 4700.00 plus interest on top of that amount at 7.3% percent. $343.10 interest rate equaling 5,043.10. The bank then compound the interest of this amount by placing it against the plaintiff's principle thus the plaintiff is seeking the compounded 7.3% in addition to the 5,043.10 = 368.14 compound interest = total $5411.24. The defendant force placed insurance twice during the loan stating the second time that there was a shortage in my escrow account that he Defendant had misappropriated. Therefore damages sought in Interest Damage for the forced placement is 5,411.24 X 2 Years = **$10, 822.49.**

**Count 7 National Flood Insurance Violation**: 42 USCS Prec § 4001- The National Flood Insurance Act Violations under common law have been discussed by Margot Botsford Justice of the Superior Court, the Justice wrote in *8 Mass. L Rep. 29; 1997 Mass. Super. LEXIS 113. \** Timothy E. McKinley et al. Northern Associates, Inc. et al. "Federal courts have uniformly held that the Act does not create an implied private cause of action under Federal law for damages resulting from a violation of its terms. See Mid-America Nat'l Bank of Chicago v. First Sav.& Loan Ass'n of South Holland, 737 F.2d 638 (7th Cir. 1984); Hofbauer v. Northwestern Nat'l Bank of Rochester, 700 F.2d 1197 (8th Cir. 1983); Till v. Unifirst Fed.Sav.& Loan Ass'n, 653 F.2d 152 (5th Cir. 1981); Arvai v.First Federal Sav.& Loan Ass'n, 539 F. Supp. 921 (D.S.C. 1982), affd, 698 F.2d 683 (4th Cir. 1983). Nevertheless, this does not necessarily preclude a plaintiff from bringing a private cause of

The McKinleys' negligence claim alleges that the Bank (1) had a duty under the Act to notify the plaintiffs before the closing that the property was located in a flood hazard area, (2) breached that duty, and thereby (3) caused harm to the McKinleys in the form of an inability to expand their home as they had planned and a reduction in the value of the home, as well as physical and emotional injuries. The negligent infliction of emotional distress is derivative, alleging that the Bank's negligence in failing to notify the McKinleys of the flood hazard area as required by the Act caused emotional distress with physical symptoms. Whether either or both of these claims states a viable cause of a cause of action under Massachusetts law appears to be an issue of first impression.

1. Negligence.

The McKinleys argue that although the Federal courts have consistently interpreted the Act in a manner which does not imply a private cause of action for its violation, nonetheless the Massachusetts courts might do so as a matter of State law. The argument raises two questions: first, whether our courts would interpret the Act as "implicitly granting an independent ground for civil liability" [3] against federally insured mortgagee banks; [4] and second, if not, whether there is a common law claim of negligence which nonetheless might be brought.

## FOOTNOTES

5 For a fairly recent discussion and review of Massachusetts cases dealing directly with the issue of judicially implied private remedies for statutory violations, see Ludlow Education Ass'n v. Ludlow, 31 Mass. App. Ct. 110, 118-20, 644 N.E.2d 227 and n.ll (1991).

6. A companion statute to the Act, which represents a key part of the same legislative scheme, is 42 U.S.C. 4012a(b). This section mandates that Federal agencies supervising banks and other

In Mr. Pailes's agreement with the defendant, the instructions and contract were to place 212.00 in escrow for the following year. The bank violated this agreement by misappropriating funds from Mr. Pailes's escrow fund on July 2007 930.59, August 2007 930.59. 9/30/06 , 930.59 11/28/06 930.59, 12/26/06 930.59, 3/5/07 930.59, 3/20/07 2,352.00. 3/30/07 930.59, 4/25/07 2,275.51, 6/4/07, 930.59, 8/17/07 214.63, 9/6/07 214.63. 10/4/07 214.63, 11/14/07 that per month for three months in violation of the escrow agreement. The total amount misappropriated by the defendant was **$9, 960.12** during the period while the plaintiff was paying the defendant under the duress of the Breach of Contract.

The plaintiff is charging **$9, 960.12** plus 7.3 %interest of 727.00 = **$10, 687.12 in escrow damage.**

## F.Breach of Fiduciary Duty/Misappropriation of Funds Held in Escrow

Coldwell Banker argues that it is not bound by the terms of the purchase and sale agreement because it did not sign that agreement. The uncontested facts establish, however, that Coldwell Banker's agents were on "notice of the potential dispute more than one week prior to the signing of the purchase and sale agreement" and Coldwell Banker nonetheless accepted the buyer's deposit. As has been noted, the purchase and sale agreement provided that, "All deposits made hereunder shall be held in escrow by Coldwell Banker as escrow agent subject to the terms of this agreement . . . ." After the parties executed the purchase and sale agreement including the fee-splitting provision,

v. Zotos. 446 Mass. 489, 499, 845 N.E.2d 322 (2006) (escrow agent "assented to the escrow agreement on behalf of his principal by holding the deeds, mortgage, and sum of $ 5,000 in escrow until the deadline specified in the escrow agreement had passed"), citing Kaarela v. Birkhead, supra.

In addition, an escrow agent has been characterized as an agent to the terms of the escrow contract". Fasciana V. Electronic Data Sys.Corp. 829 A.2d. 160, 173

Moreover, an escrow agent holder's duties are defined by the escrow instructions. Denaxas V Sandstone Court, L.L.C. 63 P. 3d 125.

To prevail on a claim for breach of fiduciary duty, a plaintiff must show 1) existence of a fiduciary duty arising from a relationship between the parties, 2) breach of that duty, 3) damage and 4) causation. Hanover Ins. Co. v. Sutton, 46 Mass. App. Ct. 153, 705 N.E.2d 279, 288-89 (Mass. App. Ct. 1999).

Plaintiff responds that funds held in escrow are held in trust and that the holder, therefore, owes fiduciary duties to the client. Carpenter v. Suffolk Franklin Sav. Bank, 362 Mass. 770, 291 N.E. 2d 609, 614 (Mass. 1973). Indeed, despite the general rule that a mortgagee does not owe a fiduciary duty to a mortgagor, "mismanagement" of an escrow account may give rise to a claim for breach of fiduciary duty by a mortgagor against a mortgagee." Vician v. Wells Fargo Home Mortg., No. 2:05-CV-144, 2006 U.S. Dist. LEXIS 26141, 2006 WL 694740, at (N.D. Ind. Mar. 16, 2006). In the Vician case, the court found that plaintiff had adequately alleged a claim for breach of fiduciary duty with respect to

Pailes reiterates his contention from his amended complaint on October 2010 the escrow holder s

Restatement Agency Escrow 6 d. Duty of escrow holder to comply with terms of escrow agreement. A holder of an escrow contracts to hold money, a deed, or some other asset until the occurrence or nonoccurrence of a specified event before a specified date; the escrow contract states the holder's duties to deliver or return the escrow upon the occurrence or nonoccurrence of the specified event. An escrow arrangement places the escrowed deed or other property beyond the control of parties to a transaction for a specified time and determines when the holder may properly make delivery. Prior to the occurrence or nonoccurrence of the specified event, an escrow holder is not an agent as defined in § 1.01 because the holder does not assent to acting subject to the control of the parties to the escrow contract. An escrow holder, although often termed an "escrow agent," is more precisely comparable to a holder of a power given as security for the benefit of a third party other than the power holder. See § 3.12, Comment b.

To achieve the purposes for which an escrow is created, the escrow holder has a duty to adhere to the terms of the escrow agreement. If an escrow holder breaches its duty to adhere to the terms of the agreement, the holder is subject to liability to parties for whose benefit the escrow was created for loss caused by the holder's.

**Self Dealing by Escrow Agent:** The Massachusetts Supreme Judicial Court has held that such a theory is viable:self-dealing by an escrow holder, such as an escrow holder's unauthorized collection from escrowed funds of a debt owed by a party to the escrow agreement, would be a breach of duty. In Mr. Pailes mortgage agreement there were two reasons why his case Headnote 6 Self-dealing by the escrow agent, i.e., "collection from escrowed funds of a debt owed by a party to the escrow agreement, would be a breach of duty." Grand Pacific Fin. Corp. v. Brauer, 57 Mass. App. Ct. 407, 413, 783 N.E.2d 849 (2003), quoting from Discipline of Two Attorneys, 421 Mass. at 627.

First in his mortgage agreement there were specific payments made in his original agreement for his hazard and flood insurance. The bank took the money and refused to pay the obligated amount written in the contract. In addition, Mr. Pailes was paying 212.00 per month for the following year in an escrow account. There were specific instructions written plainly for the lender that 212.00 was to placed in escrow for the following year's hazard and flood insurance policy premiums. The lender in the fourth month began to take unauthorized funds out of Mr. Pailes's escrow account to pay for their "created forced placed Hazard and Flood scheme". As you can see in Mr. Pailes payment history already pleaded in his payment history pleaded in his amended pleading in October 2010 above Pailes spells out the specific months and amounts the defendant took unauthorized funds from his account. Wheelwright v. Wheelwright, 2 Mass. 447, 453

Escrow Agent Unauthorized 77 Mass. App. Ct. 665, 933 N.E.2d 694,2010 Mass. App. LEXIS 1220 JONATHAN M. ZANG vs. NRT NEW ENGLAND INCORPORATED. [1]The buyer said the agent breached its fiduciary duty by not paying his agent part of his deposit. The appellate court

because it held the deposit pursuant to the purchase and sale agreement knowing of a possible dispute, so those terms applied to it as escrow agent, since it could have, but did not, negotiate different terms or pursue a corrective avenue. It was unnecessary to decide if the buyer's agent was a procuring cause of the sale, under rules of the Multiple Listing Service, because the agent's liability arose from its fiduciary duties under the escrow agreement. The buyer was entitled to summary judgment because undisputed facts showed the agent did not follow unambiguous escrow instructions.

**Escrow Agent, Escrow Accounts in Massachusetts and Foreseability:** For example, an escrow agent with questions as to the proper disbursement of funds could file a complaint or cross-complaint in interpleader pursuant to Mass.R.Civ.P. 22, 365 Mass. 767 (1974), even though it denied liability to a claimant or claimants. See Mass.R.Civ.P. 22 & Reporters' Notes, third par., Mass.Ann.Laws, Rules of Civil Procedure, at 346 (LexisNexis 2009) (Rule 22 "allows the person asking relief to aver that he is not liable in whole or in part to any or all of the claimants. In other words he may plead that he owes no claimant anything; but that if he does, he does not know which"); National Lumber Co. v. Canton Inst. for Sav., Bank of Canton, 56 Mass. App. Ct. 186, 188, 775 N.E.2d 1241 (2002) (purpose of interpleader is to sort out the amounts and priorities of competing claims to a fund); Smith & Zobel, Rules Practice § 67.2 (2d ed. 2007) (rule permitting deposit into court serves several purposes, including "safeguarding the disputed fund for future disposition"). See generally Eisenberg, 5 Debtor-Creditor Law § 47.03[3][b], at 47-26 (2010) ("In cases of uncertainty, the escrowee may find it advisable to bring an interpleader action to determine the parties' rights under the agreement").

(1998) (insurance company did not commit an unfair settlement practice when it commenced an action to obtain a determination of the disputed issue and placed the disputed proceeds in an interest bearing bank account while the action was pending); Phoenix Ins. Co. v. Churchwell, 57 Mass. App. Ct. 612, 616-617, 785 N.E.2d 392 (2003) (same). Restatement (Second) of Agency § 383 comment a (1958) ("If there is doubt as to the legal effect [of a principal's instructions], the agent's safety lies only in referring the matter to the principal or to someone designated to determine the question").

Pailes contends the defendant was negligent not using reasonable care in performing the duty agreed in the contract agreement of paying 212.00 per month to be disbursed to the insurance plans. The defendants were fully aware of where to send the funds through the contract. Pailes contends that the defendant did not take foresee ability action as in such cases above, instead of leaving the escrow in tact bearing interest. The bank breached the contractual obligation of 212.00 being designated per month for future insurances as written in the contract. Instead, the bank overreached taking more funds as an "agent" it was obligated to allocate toward unjustly enriching itself through the escrow fund. Mr. Pailes has described that unjust enrichment is the equivalent of interest as described by the Supreme Court in Smiley quoted above.

**Escrow Performance of an Agent** Escrow Account: According Restatement of Agency§ 8.09 Duty to Act Only Within Scope of Actual Authority and to Comply with Principal's Lawful Instructions

(1) An agent has a duty to take action only within the scope of the agent's actual authority.

(2) An agent has a duty to comply with all lawful instructions received from the principal and persons designated by the principal concerning the agent's actions on behalf of the principal.

Duties to of Agent to Principal: actual authority, whether established through manifestations of the principal at the commencement of the agency relationship or through interim instructions from the principal. Comment b discusses an agent's duty to act only with actual authority, that is, consistently with a reasonable interpretation of manifestations of assent made by the principal to the agent. Comment c discusses an agent's duty to comply with lawful instructions furnished by a principal. Comment d discusses the analogous duty of an escrow holder to comply with the terms of the escrow agreement.

Section 2.01 defines "actual authority." Section 2.02 states how the scope of an agent's actual authority is determined.

b. Duty to act only within scope of actual authority. The existence of a relationship of agency is premised on a manifestation of **"assent by a principal"** that an agent shall act on the principal's behalf. An agent acts with actual authority as stated in § 2.01 "when, at the time of taking action that has legal consequences for the principal, the agent

2.02(1), an agent has actual authority to take action for which the principal's assent is designated or implied in the principal's manifestations to the agent and to take actions that are necessary or incidental to achieving the principal's objectives as the agent reasonably understands them when the agent determines how to act. An agent's interpretation of a principal's manifestations and understanding of a principal's objectives must be reasonable. See § 2.02(2) and (3).

If an agent takes action beyond the scope of the agent's actual authority, the agent is subject to liability to the principal for loss caused the principal. The principal's loss may stem from actions taken by the agent with apparent authority, on the basis of which the principal became subject to liability to third parties. The principal's loss may include costs the principal incurs in defending against lawsuits brought against the principal by third parties. By taking action beyond the scope of actual authority, an agent may become subject to a duty to provide information to the principal that is material to the principal. See § 8.11. It will often be material to the principal to know that the agent has taken unauthorized action and to know what measures may be required to repudiate any transaction stemming from the agent's unauthorized action. See id., Comment b. An agent's duty to take action only within the scope of actual authority.

Wherefore, Mr. Pailes never assented to any other agreement that was not specified in the performance in the escrow account.

**Legal Argument: Escrow Account: § 8.09  Duty to Act Only Within Scope of Actual Authority and to Comply with Principal's Lawful Instructions**

Damages and Remedy for Breach of Contract

## Restatement 2nd § 360.   Factors Affecting Adequacy of Damages

In determining whether the remedy in damages would be adequate, the following circumstances are significant:

(a) the difficulty of proving damages with reasonable certainty,

(b) the difficulty of procuring a suitable substitute performance by means of money awarded as damages, and

(c) the likelihood that an award of damages could not be collected.

**United States District Court**
**District of Massachusetts**

**Civil Action No. 10-11509-GAO**

**Daniel Pailes,**
**Plaintiff,**

v.

**HSBC Mortgage Services and Beneficial Mortgage Corporation, Defendants**

**Legal Argument**

The Legal Argument not to dismiss this claim under 12 b citing case law that cautions the court

to deny claim presented before the court that are cognizable to a jury of the plaintiffs peers.

The plaintiff has pleaded his claims of violation for wrongfully force placing insurances while

the plaintiff had active policies. "Suasponte dismissals of a plaintiffs claims are strong medicine

and should be dispensed with sparingly". Bennett v U.S., D. Mass. 2005, 389 F. Supp. 2d.121

Federal Civil Procedure Key Number 1824. The plaintiff has presented to the court the fact that

the Defendant wrongfully forced placed insurances and the Defendant finally admitted they

committed the violation in 2009 nearly 4 years later, this should demonstrate to the court that a

continuing violation theory was at hand all during the years. In addition the court should be

reminded of the following case " Trial committed reversible error in ruling on motion to dismiss

complaint of a pro se plaintiff by considering not only the complaint but also independent oral statements and written material. Mmoe v Coomonwealth 1985 473 N.E. 2d. 169, 393 Mass. 617 Appeal and Error 1042 (.5); Pretrial Procedure 681

**Federal Law Governs Right to Jury Trial, Even in Diversity Cases: Jury Trial has been Granted per order 7/18/2010**

### Pro se pleadings and the leniency of the litigant.

"The broad powers of a Superior Court judge to adopt procedures to promote justice, see Fanciullo v. B. G. & S. Theatre Corp., supra at 51, do not include the power to fashion procedures in disregard of the Massachusetts Rules of Civil Procedure. Although some leniency is appropriate in determining whether a pro se complaint meets the requirements of those rules, see Sisbarro v. Warden, Massachusetts State Penitentiary, 592 F.2d 1, 2 (1st Cir.), cert, denied, 444 U.S. 849 (1979); Haines v. Kerner, 404 U.S. 519, 520 (1972), the rules bind a pro se litigant as they bind other litigants. Kornatowski v. Family Mut.Sav.Bank, 388 Mass. 1011 (1983).International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 847 (1983). Pleadings must stand or fall on their own. Oral representations and extraneous materials not incorporated by reference can neither add to nor detract from them. Appropriate defense motions and answers are not possible in the absence of a complaint that, un-supplemented by oral or written material, sets forth plainly, concisely, and directly the plaintiffs claims. Furthermore, nothing in the rules of civil procedure authorizes a judge to recast a complaint in a form that corresponds to the judge's view of what claims the plaintiff intended but failed adequately to set forth. The judge should not have gone beyond the complaint when he ruled on the defendants' motion.

**Breach of Fiduciary Duty**The Plaintiffs Claim for Fiduciary Duty (Count One) must be recognized as a violation of law and relief be granted to the plaintiff.

The Plaintiff understands the first rarely and or sparingly judges on Breach of Fiduciary Duty and Escrow Holder as is an essential part of the plaintiffs claim. However, the first circuit has ruled on the fiduciary duty in (in the matter of the Discipline of Two Attorney's SJC 421 Mass. 619. The Board concluded that the attorney's had fiduciary duty to disclose to the seller Conzenzi any material fact that, if known might have caused her not to agree to the escrow. Conzenzi was not to an escrow agreement beyond the obvious obligation to parties Boston RealEstate Bd. Vs. Board of Registration of Real Estate Brokers & Salesmen, 405 Mass. 360, 540 N.E. 2d. 1313; Kaarela v. Birkhead, 33 Mass. App. Ct. 410, 412, 600 N.E. 2d 608 (1992) (escrow holder is not agent of either party, but is a fiduciary of each); Restatement (Second) of Agency § 14D (1958). B

**Definition of a Fiduciary:** The Determination on whether or not there is a breach of fiduciary duty is question of fact for determination by the jury and not a matter for dismissal at this early stage of the proceedings.

The plaintiff satisfies the elements of Breach of Fiduciary Duty. These elements are (1) the borrower reposes faith, confidence, and trust in the bank, (2) the borrower is in a position of inequality, dependence, weakness, or lack of knowledge, and (3) the bank exercises dominion, control, or influence over the borrower's affairs." The Plaintiff has easily satisfied these requirements.

4. Waddell v. Dewey County Bank, 471 N.W.2d 593-94 (S.D. 1991); Kruse v. National Bank of Indianapolis, 815 N.E.2d 137 (Ind. App. 2004). While most states seem to require the presence of all three conditions, others have a different standard. See, e.g., Temp-Way Corp. v. Continental Bank, 139 B.R. 299, 318 (E.D. Pa. 1992) (evidence of lender's control of debtor may be sufficient to indicate a fiduciary relationship); Coles Dept. Store v. First Bank (N-A.) Billings, 783 P.2d 932 (Mont. 1989) (fiduciary relationship created if bank operates as a "financial advisor" during a long-term, exclusive relationship); see also Capital Bank v. MVB, Inc., 644 So. 2d 515, 518 (Fla. Dist. Ct. App. 1994) ("special circumstances may impose fiduciary duty on a bank. including where the lender (1) takes on extra services for a customer, (2) receives any greater economic benefit from a typical transaction, or (3) exercises extensive control."

The Defendant's contention that there is no breach of fiduciary relationship based on Mass and Federal law is wrong and must be denied at this preliminary stage of the proceedings.

It should noted that under one of the cases that the opposing counsel cites demonstrates a relationship of fiduciary is a question of fact accordingly the defendant's premise under the Mass law must be denied. In Markellvs Sidney B. Pfeifer Foundation, Inc. Mass. App. Ct. 412 pg. 444, "that case quotes "whether a relationship of trust and confidence exists is a question of fact." Hayes vs Moulton, 194 Mass. 157, 165. Therefore, the case must be determined by a factfinder and or jury trial. In addition the first circuit has precedent of hearing cases related to fiduciary duty where the plaintiff was provided with a Jury Trial. The rule is general and fundamental, that no person holding trust funds can be allowed to derive any personal gain or advantage, either directly or indirectly, from the use or sale thereof that he must account for all the profits arising from such use, if profits are made, and that this rule is applicable to every kind of fiduciary relation: to executors, administrators, trustees, guardians, directors of corporations, and all

persons who hold funds in trust for others. 294 N.E.2d 363 Philip O'Brien, Jr., guardian ad litem, v. William Dwight & others

**Higher duty of care Fiduciary Duty**When a fiduciary duty is found to exist, the lender will be held to a higher level of conduct and its actions will be subject to the stricter standards required of a fiduciary. 3. Steelvest, Inc. v. Scansteel Serv. Ctr., 807 S.W.2d 476, 484-86 (Ky. 1991); Barnett Bank v. Hooper, 498 So. 2d 923 (Fla. 1986); Bohm v. Commerce Union Bank & Trust, 794 F. Supp. 158, 164-65 (W.D. Pa.1992). See also A. Gay Jenson Farms Co. v. Cargill, Inc., 390 N.W.2d 285 (Minn. 1981) (discussed at P 79.05[2] infra). See also cases cited at P 79.03[3] n.1 1 supra

**B. The Plaintiff claimed rightfully for Breach of Contract (Count 2) and Breach of Implied Covenant of Good Faith and Fair Dealing (Count 3)** and should not be dismissed. The plaintiff in a case of unfair practices and obviously deceptive acts, is a question of fact. 15. Teitelbaum v. Hallmark 25 Mass. App. Ct. 555, USM Corp. Vs Arthur D. Little System ,Inc, 28 App. Ct. 108The Covenant of good faith and fair dealing is implied in every contract. Kerrigan v. Boston 361 Mass. 24,33 (1972).

Question of Fact and Fiduciary Duty: Exhibits and Evidence before the Court and Question for the Jury.In the case below, in Midway, the question of fact was a letter. Pailes the plaintiff has supplied the court with the HUD agreement demonstrating where the funds paid by the plaintiff and the defendant in open court admitted they violated my rights by force placing the plaintiff. The plaintiff has provided the court with further oral testimony and an amended pleading of the formula for the unjustly enriched amounts the defendant used breach the agreement of the escrow agreement, contractual agreement and the untimely disbursements of the contracted

amounts from the HUD agreement totally on or about $1,130. These documents presented to the court for evidence, Exhibits in the plaintiff s original case, the amended pleading for a jury to exam and determine as a matter of fact.

Breaches of fiduciary duty cases in the first circuit and precedent with question of fact:

While construction was proceeding, and within thirty days after the mortgage funds had been deposited in Twin Towers' Construction accounts, Twin Towers withdrew an amount of $ 22,000 for an unknown purpose. Subsequently, having refinanced the project with another institution, Twin Towers discharged its obligations under the initial mortgage. At that time, Midway had been paid in installments for all but its final bill of $ 18,824.65. Twin Towers was later declared bankrupt, and Midway was named as one of its creditors. Midway then brought an action in the Superior Court, seeking to recover the outstanding bill from Granite, alleging breach of contract, and, in the alternative, breach of Granite's duty as an escrow agent.

Questions of fact remain as to the construction of the defendant's letter. The plaintiff appears reasonably to have relied upon the language used by the defendant and should be afforded the right to present its case in establishing the existence of either an express contract to guarantee payment or an escrow agreement and the defendant's apparent breach of its fiduciary duty as an escrow agent. See Childs v. Harbor Lounge of Lynn, Inc., 357 Mass. 33, 35 (1970); Superior Glass Co. v. First Bristol County Natl. Bank, 380 Mass. 829 (1980).(Midway Excavators, Inc. v. Granite Sav. Bank, 17 Mass. App. Ct)

## Compounded Interest Rate andUnjust EnrichmentOf a Loan:

Based on totality of facts presented and to be presented at jury trial plaintiff stands with his claims of unjust enrichment theory of a loan as an interest violation damage claim and has presented a formula in the amended pleading. The plaintiff also put forward a proposal that Mr. Felker be able to present evidence and understanding of this formula in his payment history that was unjustly enriched. The plaintiff has been denied for an expert in the order of 9/18/2010. The plaintiff now will present to the jury the formula in which the bank compounded interest in relation to his loan.

93 A Claim for Unfair and Deceptive Practices was denied as being untimely. 9/18/2011 order.

## Breach of Contract

The plaintiff flatly denies the bank reimbursed me. The attorney general's office representative has even said, "they did not reimburse you". How many fictitious untruths, half- truths, and presumptive claim will the defendant make to this court? Good Faith and Fair Dealing was broken the first month of the mortgage in the force placed insurances and the unjustly enriching of the loan. The court and a jury would easily see the defendant has continued to state untruths to the court and the plaintiff should be heard in a jury trial before the court so that he gets fair trial. The motion to dismissed the breach of implied good faith and fair dealing should not be dismissed at this stage and should determine in a jury trial as a matter of fact. Below are two cases that demonstrate in Massachusetts law and error in contractual agreement can be a Breach of implied Covenant of Good Faith and Fair Dealing. The plaintiff would like the relief he has sought and the defendant motion for dismissal should denied.

Under Massachusetts law, the interpretation of a contract is ordinarily a question of law for the court. Only if the contract is ambiguous will there arise issues of fact reviewable for clear error. The duty to act "reasonably," like a duty to employ "best efforts," or to act in "good faith," is not reducible to "a fixed formula, and varies with the facts and the field of law involved. Rey v. Lafferty. 990 F.2d 1379

> Subsequently, on November 30, 2000, plaintiffs filed motion for leave to amend their complaint so as to add an additional six counts, including claims for defamation, invasion of privacy, negligence, breach of implied good faith and fair dealing, breach of fiduciary, and loss of consortium. On December 26, 2000 Judge Toomey allowed plaintiffs' motion to amend their complaint, with the caveat that "if the amendments hereby allowed prove to be unrelated to the causes of action asserted in the original complaint, the court may consider the viability of

The amendments upon motion by the defendants." Defendants filed their timely response in the form of an answer with affirmative defenses on January 24, 2001 Papasodero v. Thayer & Assocs., 2001 Mass. Super. LEXIS 169

**Count B of Defendant Motion to Dismiss** The defendant was the escrow agent and was the underwriter of the loan. Pailes had active policies at the time of the forced placed insurances and the Defendant had full knowledge of this information and intentionally forced placed insurances to unjustly enriching the loan. The defendant had my insurance policies and knew the dates of the active policies and disregarded these dates and the agreement of paying monthly payments. The plaintiff states for the record there was no modification and no reimbursement and plaintiff should be provided with the relief sought and or a jury trial to determine the violations presented to the court and the further evidence and witness testimony that will be brought forth to prove the

claims the plaintiff has put forth. Pailes takes exception to the Defendant characterization that "failing to pay his mortgage" and "his failure to set forth facts". the plaintiff has set forth facts that the defendant unjustly enriched the loan, rescinded the contract and escrow agreement the first month of the mortgage by wrongfully force placing insurances and then not reimbursing him but instead, enriching the loan to the point where the plaintiff was paying the defendant under a breach agreement and paying higher amounts not signed for in the mortgage agreement due to the bank's trickery of force placing insurance when they had full know that the plaintiff had active policies.

**2. Compounded Interest and Unjust Enrichment of the Loan** this claim should not dismissed due to the fact the plaintiff has presented to the court the fact finding in the payment history should be presented to the court by the witness provided in the plaintiffs amended pleading to demonstrate to the court and jury the formula presented in how the Unjust enrichment theory occurred and the Compounded interest Violation Damage took place and a jury should decide based onthe presentation of these facts. The Defendant simply states that the plaintiff has not stated a claim. A jury should be able to decide whether the plaintiff has stated a claim. The plaintiff has backed his claim with case law and demonstration of a formula in the Amended pleading. The plaintiff has demanded a jury trial and the ability to explain the counterclaim in a jury trial.

**3.Untimely Disbursement of Escrow Funds Nature of the Elements of an Escrow**: a. Nature of escrow. An escrow is a deed, money or chattel delivered to a person, the holder, by another and which the holder contracts to retain until the happening or non-happening of an event; if the event happens, or fails to happen, before a specified time, the escrow is to be delivered to a third person; otherwise he is to return it to the depositor. Restatementof Law-Agency 14 D

InMcDonald v Huff 77, Cal 279, 19 P. 499. (1888), "the grantor was not permitted to recover a deed from depositary, because the depositary was bound to deliver when the conditions were performed".

Escrow Agent: Definition: The escrow arrangement worked out by the attorneys, as outlined in their correspondence, constituted their agreement: if Sheehan was unable to assume the sellers' mortgage, without any fault of his own, then all obligations of both parties would cease and the deposit was to be refunded. That understanding between the attorneys was unambiguous. Kaarela v. Birkhead, 33 Mass. App. Ct. 410

In Birkhead, The judge's finding for the plaintiffs was not premised on any theory of law involving the defendant's liability as an agent, but was more aptly based upon a long-standing principle of personal liability incurred by a fiduciary. It was said in Jenkins v. Bacon, 111 Mass. 373. 379 (1873), that "[the escrow agent's] duty was to keep the deposit; he could not dispose of it without the express or implied authority ofthe depositor. . . . In so doing, he subjected the plaintiff to a risk which he had not contemplated, and did an act not authorized by the terms of his trust.' "Although the escrow holder is not the agent of either of the parties, he is a fiduciary of both of them." Restatement (Second) of Agency § 14D app., reporter's note at 60 (1958). Thus the defendant, by depositing the escrow fund in his fiduciary account, was bound to return it if the financing agreed upon fell apart; or, in the language of the law, the express condition of the underlying agreement was not met. The deposit of the escrow funds constituted an acceptance of the escrow arrangement.

**Breach of Escrow Holder** *and unjustly enriching the Loan through an escrow account*

The Supreme court has held that reasonable expenses, including attorney's fees, incurred by the bank as escrow holder in the suit, which were attributable to the discharge of its duty under the escrow agreement. In plaintiffs claim, Pailes has properly asserted that the escrow agreement was breached from the beginning of the mortgage agreement and should be recognized and or be able to be presented to the court in a jury trial.

The court determined that reasonable expenses, including attorneys' fees, incurred by the bank as escrow holder in the suit, which were attributable to the discharge of its duty under the escrow agreement, could properly be made a first charge on the fund. However, the bank as escrow holder was not entitled to any allowance of expenses or fees incurred to protect its own claim against the fund to secure a debt owing to it by respondent. Rude v. Buchhalter, 286 U.S. 451 On appeal, the court reversed. The trial court erred in finding that defendant attorney acted as an escrow agent or account debtor under the sales agreement. Defendant received the funds merely in his capacity as attorney for the sellers and he held the funds unconditionally. Because the funds were neither earmarked for plaintiff nor belonged to plaintiff, defendant had no obligation to pay the funds to plaintiff.

> An escrow is created when one party to a transaction delivers a sum to a third party, the escrow agent, for him or her to hold until the performance of a condition and then to deliver to the other party to the transaction.

> Therefore, even though the judge stated that other sellers under the sales agreement had rights to the S 45,000, he concluded that Mr. Levin was liable to Frontier for failing to pay it

the entire $ 45,000 directly. In NRT New England, Inc./DBA Coldwell Banker Residential Brokerage 2010 Mass. App. Lexis 1559.

On appeal, the agent argued there was a disputed issue of material fact that had an impact on the enforceability of the liquidated damages provision. Further, the agent argued it had not breached its fiduciary duties. The Trial Court properly determined the seller was entitled to the escrow funds in their entirety as liquidated damage. The five percent of the purchase price was a reasonable forecast of damages. The Agent had breached its fiduciary duty by taking an adversarial interest in the escrow funds because the agent engaged in self- dealing by placing its personal interests in conflict with its obligation to the seller. Moreover, the Agent's conduct was "unethical andunscrupulous" within the meaning of Mass. General Laws Annotated 93 A, && 2 and 11.


Credit Damage due to Breach of Contract (specific performance)

The plaintiff realizes the order on date 7/18/11 as denied 15 U.S.C. 1692 k(d) and 15 U.S.C. 1681 p as untimely. Respectively, the plaintiff continues to bring his claim before the Jury and Judge what the plaintiff sees as inaccurate credit reporting that has cast him in false light before the public, is part and particle, thus direct link and stemming from the breach of contract. Under Breach of Contract, a plaintiff may pursue damages under incidental and consequential damages as a result of the Breach of Contract. Pailes contends that inaccurate reporting to Transunion, Experian and    has harmed his purchasing power inaccurately. Pailes maintains that he reported these inaccuracies in 2007. The credit reporting agencies reported the dispute, but it did not bring Pailes to wholeness based on the credit score he had before he signed the Contract with the Defendant. Pailes claims the inaccuracy continued to affect his credit score inaccurately based on

the Breach of Contract actions take in February 2006. After three months, the Defendant continued to send adverse credit information to all three of the main credit bureaus damaging the plainiff's credit scores again based on the force placed insurance inaccurate placement and Breach of Contract action. The plantiffPailes is bringing two courses of remedy the his credit worthiness and to be brought whole from the Breach of Contract. The plaintiff would be continued slandered in public under the Breach of Contract.

## False Light Invasion of Privacy by inaccurately Reporting to the Credit Agencies

The plaintiff claims these violations in his original complaint, that the Defendant falsely reported him to the credit bureaus based on the force placed insurances in accurately from the first four months of the mortgage agreement,that they now openly admit in open court of violating by illegally force placing insurances while the plaintiff had active policies. The Plaintiff has presented exhibits and evidence to the court that the defendant did pay his insurances, thus inaccurately reported him to the bureaus. In doing so, the Defendant placed the plaintiff in False Light before the public damaging his credit and rating before the public hamstringing him from being able to refinance his mortgage, especially noted in the exhibit from the Bank of America of Denial of Credit in the plaintiffs amended counterclaim. In Addition, it would be clear to a jury that this breach existed and was the impetus to the unjust enrichment of the loan.

The plaintiff has pleaded and demonstrated the denial of credit has harmed him with the denial letter from the bank and numerous charges he has made about incidental occurrences because of being denied credit like not being able to obtain a car loan (presented in exhibit to the court). Secondly, in oral presentation the plaintiff named having his gas shut off a hardship due to the unjust enrichment of the loan. Thirdly, the plaintiff was not able to secure the winterizing of his home due to the forced placed violations and access to credit

from the damage done by the Defendant in reporting him inaccurately. The plaintiffs claims would be cognizable to a jury of his peers.

The Fair Credit Reporting Act, 15 U.S.C. §§ 1681-1681t, creates a federal remedy against a credit reporting agency that fails to follow reasonable procedures to assure maximum possible accuracy of the information contained in a consumer's credit report. 15 U.S.C.S. §§ 1681e(b), 1681o, 1681n Without a causal relation between the violation of the Fair Credit Reporting Act, 15 U.S.C. §§ 1681-168U, and the loss of credit, or some other harm, a plaintiff cannot obtain an award of actual damages, which is one of the remedies under the Fair Credit Reporting Act. It does not follow that a plaintiff cannot obtain any other remedy, such as an injunction. The statute does not contain an explicit requirement of establishing injury, suggests that among the other remedies might be attorneys' fees.   Crabill v. Trans Union, L.L.C., 259 F.3d 662

In Egipciaco- Ruiz, the court found inaccurate reporting under the above violation the plaintiff has quoted, 15 U.S.C. §§ 1681-1681 a-t

On August 18, 2005, the Court issued an Opinion and Order granting in part and denying in part plaintiffs' motion for summary judgment and R&G's cross-motion. In essence, the Court ruled that a material violation of TILA's disclosure requirements occurred due to the misstatement of the finance charge and the amount financed, triggering plaintiffs' right to rescind the transaction.

A brief overview of the relevant provisions of TILA, which was passed in 1968, shows the purpose of TILA is to "assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use

of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices." 15 U.S.C. § 1601(a) The Act requires creditors to make "clear and accurate disclosures of terms dealing with things like finance charges, annual percentage rates of interest, and the borrower's rights." See Beach v. Ocwen Fed. Bank, 523 U.S. 410, 412, 118 S.Ct. 1408, 140 L.Ed. 2d 566(1998).

If the creditor fails to do so, it can be held liable for criminal penalties, see 15 U.S.C. § 1611, and a debtor can sue for damages (including a statutory penalty of twice the finance charge), see 15 U.S.C. § 1640(a). Beach, 523 U.S. at 412. Egipciaco- Ruiz v. R&G Mortg. Corp, 2005 U.S. Dist. LEXIS 40857

In addition the first circuit has upheld the Buckhannon to the Civil Rights Attorneys' Fees Awards Act of 1976) for fees and attorney costs to prevailing plaintiffs. The plaintiff has demanded these fees in his original claim and would understandable to a jury of his peers in presenting his equitable claims before the court. See these cases as recognition of these prevailing parties fees provided to plaintiffs in Fair Credit Reporting act violations. Doe v. Boston Pub.Schs., 264 F. Supp. 2d 65 and in Antonio v. Boston Pub. Schs. 314 F. Supp. 2d 95 Crabill v. Trans Union, L.L.C., **259** F.3d 662, 667 (7th Cir. **2001** (holding Buckhannon applicable to the Fair Credit Reporting Act, 15 U.S.C. § 1681 et. seq., which authorizes attorneys' fees for prevailing parties).

## Conversion Claim, Emotional Distress, Chattel Damage, Actual Damage, Business Interruption, Consequential Damages

These claims should not be dismissed because the plaintiff has made these claims in his complaint, oral hearing and amended complaint. Now, the plaintiff would present further evidence before the court with witnesses requested and the jury trial. *A* jury should be able to

determine the facts and the damages as presented by the plaintiff. His claims have been stated for all these claims and should not be dismissed at this preliminary stage.

## § 1A. Remedy at Law for Damages not Bar to Action for Specific Performance of Contract.

The fact that the plaintiff has a remedy in damages shall not bar an action for specific performance of a contract, other than one for purely personal services, if the court finds that no other existing remedy, or the damages recoverable thereby is in fact the equivalent of the performance promised by the contract relied on by the plaintiff, and the court may order specific performance if it finds such remedy to be practicable. If performance is not ordered, damages may be determined in the proceeding, and if the defendant claims a jury on that issue, the issue shall be framed and referred for jury trial.

## Aerovox, Inc. v. Parallax Power Components, LLC (In re Aerovox, I..., 281 B.R. 419

The general common law rule is that equitable remedies are not available to those who can be adequately compensated at law. The availability of monetary damages, however, does not necessarily bar a suit in equity for specific performance. Whereas in many jurisdictions the legal remedies of damages and restitution are the preferred method of redressing breaches of contract, and specific performance is a remedy limited to real estate, Massachusetts law is more liberal with respect to the availability of specific performance. Under Massachusetts law, contracting parties also have available the equitable remedy of specific performance, a decree ordering a party to affirmatively carry out his contractual duties or enjoining it from violating the contract. Mass. Gen. Laws Ann. ch. 214, § 1A (West 1989). Moreover, Massachusetts law allows specific performance on contracts for personalty. The test for specific performance in the case of a

contract for the sale of personalty is the same as for real estate, namely whether damages for the breach are or are not the equivalent of the promised performance

## 11 A.L.R.4th 891 Contract Breach Specific Performance and Consequential Damages to Credit and Purchasing Power

Successful plaintiffs in action to specifically perform contract to purchase house would be awarded damages for (1) reduction of monthly payments on junior purchase money mortgage vendor agreed to take back as part of sales agreement to compensate purchasers for increase in monthly payments to lender on senior mortgage due to rise in interest rates from date of contract to date of trial, even though increased costs on senior loan would last for its 30-year term and junior loan had term of 15 years, where purchasers' liability on senior loan for its full term was speculative; (2) additional moving costs purchasers incurred when they vacated their apartment in reliance on the contract and had to take another apartment due to defendant's breach; and (3) cost of new credit check required by senior lender caused by delay in defendant's performance. Purchasers were not entitled to recover as damages: (1) Increased rent they paid for new apartment over amount paid for old apartment as amount they paid for new apartment was less then monthly expenses they would have incurred if vendor had performed contract, even allowing for tax benefits and equity growth; (2) cost of having vendor's house inspected as this expense would have been incurred in any event; and (3) attorney's fees for prosecuting action as there was no contractual or statutory basis for such award. Bregman v. Meehan, 125 Misc. 2d 332, 479 N.Y.S.2d 422 (Sup 1984) (citing annotation).

**Forced Placement case** :In the Second case, Nosek is a similar case to the plaintiffs yet he has not declared bankruptcy. Nosek had RESPA violations against her. The plaintiff here is claiming the similar claims relating to untimely disbursement of and non payment of his issurances caused the unjust enrichment. Nosek was accorded nominal damages. The plaintiff asserts he would prevail like Nosek on the fact before a jury trial and the evidence presented to the court.

**Cases holding that a rejected tender extinguishes the mortgage** include Judge Devel. Corp. v. Bank of New York, 814 F.Supp. 384 (D.Vt.1993); Winnett v. Roberts, 225 Cal. Rptr. 82 (Cal Ct.App.1986); Foster Lumber Co. v. Weston Constructors, Inc., 521 P.2d 1294 (Colo.Ct.App.1974); Bowman v. Poole, 91 S.E.2d 770 (Ga.1956); McFarland v. Christoff, 92 N.E.2d 555 (Ind.Ct.App.1950); Depon v. Shawye, 161 N.E. 243 (Mass.1928); Caruthers v. Humphrey, 12 Mich. 270 (1864); Mr. U Inc. v. Mobil Oil Corp., 249 N.W.2d 909 (Neb.1977); Kortright v. Cady, 21 N.Y. 343 (1860); and General Electric Credit Corp. v. Lunsford, 167 S.E.2d 414 (Va.1969). See also Mendez v. Rosenbaum, 662 P.2d 751 (Or.Ct.App.1983) (tender was effective, where mortgagee made deliberate attempts to obstruct mortgagors' tender). See generally Annot., 93 A.L.R. 31 (1934).

**Recoupment Claim and Defamation of Credit:**

**The plaintiff as he has explained above realizes the time limitation of the Fair Credit Reporting Act is one year. The plaintiff Mr. Pailes sternly asserts this was the essence of the damage done by the breach of contract in not following the contract instructions in performing the contract ruin his credit and purchasing power in all aspects of his financial**

**life. Pailes asserts that he would like to recover damages under recoupment under this**
**amended pleading.**

The first circuit has been clear on the federal common laws of Recoupment and Breach of
Contract cases. A plaintiff does have a cause of action as the judge explained in **Motorsport**
**Eng'G v. Maserati S.P.A.,** "Maserati II and MNA rely on Professor E. Allan Farnsworth, who
writes: "the beneficiary is subject to recoupment of any claims of the promisor for damages for
breach of contract by the promisee. The claim is only good against the beneficiary to the extent
that it extinguishes the beneficiary's claim; it cannot be used to impose liability on the
beneficiary." III Farnsworth on Contracts, § 10.9 at 53-54 (2d ed. 1998) (emphasis added).
Maserati II and MNA contend that to hold a third-party liable for the debts of a breaching
promisee would turn contract law on its head.

In re Melvin, 75 B.R. 952 The leading Pennsylvania case regarding the application of the
doctrine of recoupment to the defensive invocation of the TILA as applied to contracts pre-dating
the one-year limitation period for instituting affirmative TILA actions is Household Consumer
Discount Co. v. Vespaziani, 490 Pa. 209, 415 A.2d 689 (1980). In that case, the Pennsylvania
Supreme Court applied the federal common law of recoupment as stated in such cases as
Rothensies v. Electric Battery Co., 329 U.S. 296, 91 L. Ed. 296, 67 S. Ct. 271 (1946); and Bull v.
United States, 295 U.S. 247, 79 L. Ed. 1421, 55 S. Ct. 695 (1935). 490 Pa. at 217-19, 415 A.2d
at 693-94. As Rothensies makes clear, recoupment is applied "only to permit a transaction
which is made the subject of suit by a plaintiff to be examined." 329 U.S. at 299.

Recoupment has thus been traditionally applied narrowly, and is restricted to the precise same transaction in which the claim is made. See, e.g., Lee v. Schweiker, 739 F.2d 870, 875 (3d Cir. 1984); Westinghouse Elec. Corp. v. Fidelity & Deposit Co. of Maryland, 63 B.R. 18, 21 (E.D.Pa. 1986); and 20 AM. JUR.2d 228, 231, 235-36 (1969).

In re Women's Tech. Inst., 200 B.R. 77 77 For the purposes of recoupment, a mere logical relationship is not enough: the "fact that the same two parties are involved and that a similar subject matter gave rise to both claims, . . . does not mean that the two arose from the 'same transactions.'" [Lee v. Schweiker, 739 F.2d 870, 875 (3rd Cir. 1984)]. Rather, both debts must arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations.

**Household Consumer Discount Co. v. Vespaziani, 490 Pa. 209** Appellees, a consumer discount company and a finance corporation, filed in assumpsit to collect on two separate loan agreements entered into by appellant debtor and her husband. The lower court affirmed appellees' objections that the one year statute of limitations contained in the federal Truth in Lending Act (TILA), 15 U.S.C.S. § 1601 et seq., barred appellant's counterclaim. On review, the court reversed and remanded so that appellant could present evidence on her counterclaim. The court held that the federal rights conferred upon the consumer by the TILA were controlled by federal law. The court, in applying federal law, found a TILA claim could be asserted by appellant in a defensive posture and that the statute of limitations under the TILA, 15 U.S.C.S. § 1640(e), did not preclude recoupment by appellant because the TILA claim and the corresponding debt arose from the same transaction. The court noted that appellant's TILA counterclaim constituted recoupment

rather than an affirmative setoff, and as such, the action was not barred by the statute of limitations.

**Calculation of Damages in Credit Cases and Truth in Lending** Plaintiff borrower's computation of damages under 15 USCS § 1640, arrived at by doubling finance charge as it appeared on each of sheets (which plaintiff treated as separate transactions), was incorrect because it created multiplying factor not contemplated by statute, as portion of each finance charge prior to last transaction was repeated in next transaction under consolidation procedure. Blackmond v Walker-Thomas Furniture Co. (1977, DC Dist Col) 428 F Supp 344.

Where there was clerical error in finance charge listed on credit disclosure statement, amount which finance charge actually should have been ($ 348.83) would be used in assessing damages rather than amount which had been disclosed ($ 345.83); to this would be added expenses which had been improperly disclosed and therefore not entitled to exemption under 15 USCS § 1605(b); damage amount would be twice total finance charge thus computed. Young v Ouachita Nat'l Bank (1977, WD La) 428 F Supp 1323.

Creditor who failed to comply with Truth in Lending Act's (TILA) requirements was liable to individual borrower for twice amount of any finance charge in connection with transaction, and liability was statutorily capped at $ 1,000; because double amount of plaintiff borrower's finance charge of $ 681.25 would have exceeded statutory maximum of $ 1,000, and because borrower was entitled to one single recovery for TILA violations, she was entitled to award of $ 1,000. Tweedy v RCAM Title Loans, LLC (2009, WD Va) 611 F Supp 2d 603.

If there is absolutely no way to determine finance charge, consumer is entitled under 15 USCS § 1640(a)(2)(A) to recover only $ 100 minimum penalty; but if finance charge can be computed, even if not disclosed in promissory note, creditor is liable for penalty of twice amount of finance charge which would have been imposed if consumer had paid obligation in regular installments. Manley v Wichita Business College (1985) 237 Kan 427, 701 P2d 893.

**Commonwealth of Massachusetts**
**Housing Court Department District Court**

**Case No. 11-22SU01 Newburyport Transferred to Lawrence District Court Case**
**No. 11H77SP000361**

**Fair Value of Damages In Counterclaim for Lack of Quiet Enjoyment of Home**

Fair Value of damages from Wrongful sale of the Defendant's Mr. Pailes's property from Dec 20, 2010 to present and continuing violation for Negligence and Intentional Infliction of Emotional Duress.

Here comes Daniel Pailes, on damages inflicted by the plaintiff, HSBC Mortgage Services in addition to the damages done during the period of 12/16/05- December 20, 2010. From the time of the wrongful sale 12/20/2010, of Mr. Pailes's home and the continuing violation 93A claim presented in the court the federal court and other damages in the origins of this case.

Fair Value of Damages in Counterclaim

Consequential Damages, Incidental, Expenses and Costs

| | |
|---|---|
| Storage Costs 90.00 per month plus security deposit 90.00 x 12 | = 1,100.00 |
| Moving Costs Additional- 270.00 per day 5 days | = 1, 350.00 |
| **Actual Damage:** Plumbing Costs: Pipes Bursting in home due to Breach and inability to | = 1,870.00 |

secure credit.

| | |
|---|---|
| Water Costs Meter and Change outs of Water Meter bursting due to Breach | = 900.00 |
| Boiler Replacement, **Opportunity Cost Estimated** | = 9,000.00 |
| Fair Credit Reporting Act Continuing Violation estimated | = 3,000.00 |
| Emotional Disturbance- | = 5,000.00 |
| Total for additional damages in this wrongful eviction process Total | $20, 630.00 |

Massachusetts Practice Volume 33 A pg. 443 Third Edition Equitable Relief: The appointment of receivers and the issuance of restraining orders and injunctions shall be governed by applicable statutes and by Rules 65 and 66, respectively, of the Massachusetts Rules of Civil Procedure; provided, however, that the court may modify the time periods and notice requirements of those rules and otherwise fashion the relief it orders as it deems appropriate. 1

1. Rule 9 Uniform Summary Process Rules

**Count 1-4  Breach of Contract**

A. **Element** Breach of Good Faith and Fair Dealing     $169,000.00  Replacement Value

**B. Element** Reasonable Expectation of Interest     $63.330.00   X  30 Years  $370,000.00

   **169.000.00 X 7.3% plus 5 years 8 months**

**C. Element** Restitution in Favor of Party in Breach     Same as Element A if not adopted.

        **Based on alternative remedy,**

        **if value can't be determined**

**D.  Element** Failure to Perform (Performance)     $1,326.22

**E.  Element** Profit Loss     Book Service     $31,018.00

**Diminished Work Capacity due to case** Moving     $11.093.00     x 30 Years  $161, 250.00

33, 280 annual salary divided by 3     X 30 Years  $332,799.99

Work on day a week

Part time Foreclosure

Contributing Factor to Job Loss

**Element F** Quiet Enjoyment and use of Home

In alternative to pipes bursting and boiler
expectancy of winterization, home improvement
claiming under Consequential Damages under
Breach of Contract, if Consequential Damages are
not accepted, then equitable remedy under Mass law of
Quiet Enjoyment of the home in Alternative for these
damages. It will not be calculated into final damages
But, if the Jury finds not in favor of consequential then
Pailes wants the boiler and pipes bursting damage in
under this law. **9,000 boiler and 1,870 for Pipes**
**$10, 870.00.**

.

**Element** G Purchasing Power Defamation of Credit-        $47,200.00   X 30 Yrs  240,000.00
          **Declaratory Judgment to have inaccurate**
          **Reporting Expunged from Credit Bureaus**

**Element** H Consequential Damages                $20,399.06

**Element** I Emotional Disturbance and loss part of       $20,000.00
          Personal life

**Element** J     Discharge of Duty and or Obligation          $20,000.00

to the Defendant. Declaratory Judgment from

Jury to discharge the loan and agreement

with Defendant.

**J.  Element  K**  Count National Flood Insurance Violation:

**In alternative to failure to perform**

**Under private cause of action for negligence**

**Same amount as Element D as an in alternative**

**To Element D remedy scheme if judge and jury**

**find not in favor for Failure  to perform.**

**Not in final total because it is an in alternative**

**remedy.  $1,326.00**

**Count 2             Escrow Damage**

**The plaintiff is charging $9, 960.12**

**plus 7.3 %interest of 727.00 and 5.8 months and yr.**

**@ 4,216.60 = $14, 176.72 in escrow damage**          $14, 176.72      X  30 yrs  $76,320

**Count 2 Escrow Account Damage:** As a direct result of this contractual breach in their duty as an agent, fiduciary duty and breach of

terms specified in the escrow agreement within the contract, the bank breached the agreement by misappropriating funds from Mr. Pailes's

escrow account without his authority, disburse funds not agreed upon in the escrow agreement and did not disburse the funds in a timely

manner as spelled out in the contract.   Childs v. Harbor Lounge of Lynn, Inc., 357 Mass. 33

**Count 2   A.   Element Failure of Fiduciary Duty          Amount to be determined by Jury**
**and Escrow Misappropriation.**

**Childs v. Harbor Lounge of Lynn, Inc., 357 Mass. 33**

Count 3     Interest Damage:  As direct result of the breach of contract in the statutory and contractual agreement, the defendant unjustly enriched itself through self dealing. Unjust enrichment has been considered interest by the Supreme Court in the cases quoted below and unjustly enriching Hazard and Flood insurances has also been considered interest the cases as Mr. Pailes pointed to in his amended pleading dated October 24, 2010. Richardson, 141 F.3d at 1231-32. As Mr. Pailes points  to in Smiley Vs Citibank 517 U.S. 735  for Unjust enrichment, misc. fees and late Fees, and therefore considered interest.

**= $10, 822.49**

**Count  3-A   Interest and the Reasonable Expectation of interest** on loss from December 2005-
now and in the future.                                                Amount to be determined by Jury

**Count  3-B   Interest Damage-**

Compounding Interest (Usury Violation 4.6.1.2)              Amount to be determined by Jury

**Count 4:   Breach of Warranty of Deed            Amount to be determined by Jury**

**Count 5:  Recoupment claim for credit repair for inaccurate reporting : Federal common**
**Law claim.                                    $47,200.00 to date 30 yrs. 240,000.00**

**Count 6:   Self Dealing 93A Unfair and Deceptive Practices** - new claim based on the action to purchase my home wrongfully through a Breach of Contract case. Amended complaint from the date of sale to themselves 93A Claim, amending the claim that was dismissed as being untimely. The action has taken place within the time allotted to state a claim.

**                                         Amount to be determined by Jury**

Count 7. Under Breach of Contract Lost Opportunity Restatement (First) of Contracts § 331 (1932)

Loss of the use of equity and home improvement (expectation) (Business Development in Commercial enterprise and property to be used for commercial space reason for purchasing and expectation. Home Improvement/Business Development       **Amount to be Determined by Jury**

Expenses and Fees incurred in Case $4,500 accounted or     **Amount to be Determined by Jury**

Total Damages to Date                    $383,838.86     and or 30 Years  $1,322,704.79

The original agreement was for 30 years, if I am evicted from my home under a wrongful breach. My damage claim totals $1,322,704.79 under breach of contract and other claims made here. If, I stay in the home my damages accure until the date of trial and on into the future until final verdict is made. As of date, my damages stand at $383,838.86.

Plaintiff, reserves the right to amend more to come.

8/12/2011

DISTRICT OF MASS
U.S. DISTRICT COURT

2011 SEP 12 P 5: 40

CLERKS OFFICE
FILED

**United States District Court**
**1st Circuit**

Civil Action number & File No. 10-11509-GAO

_____

**Daniel Pailes, Plaintiff**

**v.**

**HSBC Mortgage Services**

_____

## Certificate of Service

I Daniel Pailes, plaintiff is proving certificate of service to Defendant Reneee Longoria Defendant's

Signed:

Daniel Pailes

Pro se Litigant

42 North End Blvd

Salisbury, Ma.  01952

978-335-8676

*Daniel Pailes*

9 / 12 / 2011

DISTRICT OF MASS
U.S. DISTRICT COURT

2011 SEP 12 P 5: 40

CLERKS OFFICE
FILED